Rachael TENNYSON

v.

**ZONING HEARING BOARD OF WEST BRADFORD TOWNSHIP and West Bradford Township Board of Supervisors and Christine A. Larer**

**Appeal of: Christine A. Larer.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2008.

Decided June 17, 2008.

Michael S. Gill, West Chester, for appellant.

Stacey L. Fuller, West Chester, for appellee, Rachael Tennyson.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Christine A. Larer appeals an order of the Court of Common Pleas of Chester County (common pleas) dismissing her appeal of the decision of the Zoning Hearing Board of West Bradford Township (ZHB). In doing so, common pleas affirmed the decision of the Board granting Rachael Tennyson a special exception to construct a stable and accessory facilities. We affirm.

Tennyson is the equitable owner of property located at 2731 West Chester Road, at the intersection of West Chester Road and Stouffs Road in Downingtown, Pennsylvania (Property). The Property consists of 20.188 acres of generally unimproved open space, with a historic farmhouse, a ranch house and some additional outbuildings. The Property is located in an R–1 Residential District,[1] as part of the Bradford Pointe subdivision and is subject to certain restrictions in a Declaration of Easements and Covenants and the Bradford Pointe Open Space Management Plan (collectively, Declaration), where it is identified as "Lot 1" or the "Farmette."

Tennyson filed a zoning application with the Board seeking a special exception under Section 401.2.B.5 of the West Bradford Zoning Ordinance (Zoning Ordinance) to develop a stable, which is a permitted use by special exception in the R–1 Residential District.[2] On August 24, 2005, the Board convened a hearing to consider Tennyson's

---

1. The intended purpose of an R–1 Residential District is as follows:

 The purpose of the R–1 Residential District is to provide for low density housing, open space and related activities in areas most likely to remain rural in character....To provide for alternative residential development patterns through the use of the Open Space Residential Design Option, affording greater opportunities for preservation of open space and natural and cultural resources ancillary to such development.
 West Bradford Township Zoning Ordinance, § 401.1.

2. A "stable" may be either "private" or "public," and a "public stable" is defined as a "building in which any horses are kept for remuneration, hire or sale." Zoning Ordinance, § 201.

application. Tennyson, David Sanders, a professional engineer, and Dan Nissley, a representative of the builder, testified in support of Tennyson's application. A number of neighbors, including Larer, who resides at 2761 West Chester Road, adjacent to the Property, questioned Tennyson and her witnesses about Tennyson's proposal.

Tennyson testified that she has operated her business, Greylyn Farm, at the Phelps School in Malvern since 1988, where she boards 42 horses, provides daily horseback riding lessons, a summer day-camp and an annual horseshow for her students. Tennyson intends to relocate her business to the Property. In order to do that, Tennyson proposes to upgrade and renovate the existing farmhouse on the Property, demolish the ranch house and several other outbuildings, and build a 7,776 square foot stable and accessory structures, including a 16,000 square foot indoor riding ring, two outdoor riding rings and parking. Tennyson intends to offer horse boarding, lessons for children and adults, summer riding day-camp and an annual horse show for her students and those who board horses with her.

Tennyson employs two full-time people at the current facility to maintain the stables. She also employs a few part-time instructors that board and train with her to provide riding lessons. The part-time staff usually works one or two days a week, providing lessons which run from 4:00 to 7:00 or 8:00 p.m., Monday through Friday. Summer camp runs the last week of June through July from 8:00 a.m. to 1:00 p.m.

David Sanders, a professional engineer, testified about the proposed project plan. Sanders had prepared the Bradford Pointe Land Development Plan in addition to the current proposal. Sanders testified *inter alia,* that the proposed plan complied with

all the Township's area and bulk regulations and relevant ordinances for an R–1 Residential District. He also testified, in his opinion as a professional engineer who had worked on other plans similar to the proposal, that the riding arenas were a normal accessory to a stable.

Dan Nissley, a sales and design associate with twenty years of experience designing equestrian facilities, also testified about the proposed equestrian facility. He explained that he proposed to build a T-shaped equestrian facility for Tennyson, consisting of a stable and attached indoor riding ring which was a "very typical" arrangement for the anticipated use. He explained that it is "very common" to have an indoor and outdoor ring associated with a stable and produced several pictures, plans and drawings from other projects to provide an idea of how the buildings would look.

During the hearing, several neighbors including Larer, questioned Tennyson, Sanders and Nissley, about *inter alia,* lighting, signage, pest control, manure storage and removal, odors, hours of operation and traffic.

The Board issued a written decision on October 5, 2005, in which it found that the proposed use of the Property is a "public stable" permitted by special exception in the R–1 Residential District of West Bradford Township and granted the special exception subject to eleven conditions. Tennyson and Larer filed appeals, which were consolidated for a hearing before common pleas. Larer filed an appeal from the grant of the special exception and Tennyson filed an appeal challenging the imposition of one of the conditions imposed. Common pleas affirmed the decision of the Board and denied Tennyson's

appeal of the contested condition.[3] Larer filed the instant appeal before this Court.[4]

### Zoning Ordinance Compliance

Larer contends that Tennyson's plan does not comply with several relevant Zoning Ordinances. First, Larer asserts that Tennyson did not meet her burden of showing that her proposal for special exception complied with the terms of the Zoning Ordinance which expressly govern such a grant. Larer argues that Tennyson's proposal does not comply with Section 801.8 of the Zoning Ordinance which provides that:

> [m]ore than one principle building may be erected on a single lot provided that all lot and yard requirements, standards and other requirements of this ordinance shall be met for each structure as though it was on an individual lot.

Zoning Ordinance, § 801.8. Larer contends that the Board's record is devoid of any substantial evidence that the historic building and proposed stable are each capable of meeting the lot and yard requirements and other requirements of the Zoning Ordinance.

■ Section 801.8 permits construction of more than one principle building on a single lot, if certain standards are met. Section 801.8 does not require that each structure actually be on a separately subdivided lot. Rather, Section 801.8 requires the applicant to demonstrate compliance with the lot and yard requirements "as if" each structure were on a separate lot. In this case, the ZHB[5] found that the testimony of Tennyson's engineer, as well as the plan itself, demonstrates "the proposed public stable/arena ... and its accessory facilities will comply with all area and bulk requirements of the Zoning Ordinance." *See* ZHB Opinion at 8. Larer points to no provision of Tennyson's plan which in any way deviates from these requirements. Thus, Larer's argument is without merit.

■ Second, Larer asserts that Tennyson failed to demonstrate compliance with the objective criteria set forth in the Open Space Residential Design Option Standards of the Zoning Ordinance (Open Space Option), Zoning Ordinance, § 802.14, because the proposed plan lacks a twenty foot separation between accessory buildings as required by Zoning Ordinance, § 401.10.C.2.[6] However, the record

---

**3.** Tennyson did not file further appeal on the decision of common pleas.

**4.** Our scope of review in a zoning case, where common pleas has taken no additional evidence, is limited to determining whether the zoning hearing board committed an error of law, or whether the board's findings are supported by substantial evidence. *Risker v. Smith Township Zoning Hearing Board,* 886 A.2d 727, 731, n. 5 (Pa.Cmwlth.2005).

**5.** As the fact-finder, it is the ZHB which judges the credibility of witnesses and the weight afforded to their testimony. *Hellam Twp. v. Hellam Twp. Zoning Hearing Bd.,* 941 A.2d 746, 749 (Pa.Cmwlth.2008). This Court may not substitute its interpretation of the evidence for that of the ZHB. *Vanguard Cellular System, Inc. v. Zoning Hearing Bd. of Smithfield Twp.,* 130 Pa.Cmwlth. 371, 568 A.2d 703 (1989).

**6.** Section 401.10.C.2 provides in relevant part:

> Under the Open Space Residential Design Option, no minimum lot area is prescribed; rather, the following lot and yard area regulations shall apply to any principal residential structure or any other structure, as shall the design standards of Section 802.14.
> 1. Minimum separation between building at any point, except as provided in subsection 2 below, shall not be less than 20 feet, except that the minimum separation shall not be less than 50 feet measured perpendicularly from the rear wall of any residential structure to any point on any other building not accessory to such residential structure.

demonstrates that Larer is mistaken in her contention that the stable and the indoor arena are two distinct buildings rather than one T-shaped structure. Nissley, a representative of the contractor engaged to build the equestrian facility, provided pictures and drawings that demonstrated that the T-shaped building, connecting the stable to the indoor riding arena, would be one unit. The ZHB, as fact-finder, found that the stable and indoor arena are one T-shaped building and not separate structures. Thus, a twenty foot separation is not required.

■ Next, Larer asserts that Tennyson's plan does not comply with Section 801.14.B.2 of the Zoning Ordinance, which requires that property developed under the Open Space Option be "in one ownership or, if in multiple ownership .... according to a single plan with common authority and responsibility." Zoning Ordinance, § 802.14.B.2.[7]

The Bradford Pointe subdivision was created pursuant to the Open Space Design option and any ownership requirements of this section are applicable to the overall development tract and not relevant to the development of Lot 1, Tennyson's property, individually. However, even if this section applies, Tennyson is, in fact, the one equitable owner of the property and the Property is being developed according to a single plan with common authority and responsibility.

### Accessory Use

■ Larer asserts that the riding arena is not accessory to the proposed stable because it does not meet the standards of an accessory use. Larer contends that the indoor arena cannot possibly be subordinate and incidental to the stable because the proposed indoor arena measures 16,000 square feet, which is more than double the size of the proposed stable, 7,776 square feet. Larer asserts that the dimension and scope of the accessory use is *the controlling* factor in determining whether a use is accessory and relies on this Court's decisions in *Risker v. Smith Twp. Zoning Hearing Bd.*, 886 A.2d 727 (Pa.Cmwlth.2005) and *Mitchell v. Zoning Hearing Bd. of the Borough of Mt. Penn*, 838 A.2d 819 (Pa.Cmwlth.2003). She also asserts that the record is devoid of substantial evidence to support the conclusion that a riding arena is subordinate and clearly incidental to the proposed stable.

■ Whether a proposed use, as factually described in an application or in testimony, falls within a given category specified in a zoning ordinance is a question of law. *Southco, Inc. v. Concord Twp.*, 552 Pa. 66, 71, 713 A.2d 607, 609 (1998). Thus, our review is plenary. Pursuant to Section 603.1 of the Municipalities

---

2. Minimum separation at any point between accessory buildings and principal structures to which they are accessory shall not be less than that prescribed by applicable provision of the current Building Code of West Bradford Township; minimum separation between accessory buildings and any other buildings shall comply with subsection 1 above. Accessory structures shall not be permitted on residential lots less than 15,000 square feet in gross area, except where approved as part of conditional use approval. Where permitted, structures that are accessory to a residential use and not ap-

proved as part of the original conditional use or land development submission shall not be located less than five (5) feet from any lot line.
Zoning Ordinance, § 401.10.C.

7. The Zoning Ordinance more fully states:

The tract of land to be developed shall be in one ownership or, if in multiple ownership, shall be developed according to a single plan with common authority and responsibility.
Zoning Ordinance, § 802.14.B.2.

Planning Code,[8] 53 P.S. § 10603.1, zoning ordinances must be liberally construed and interpreted broadly so that a landowner may have the benefit of the broadest possible use of the land. *Southco, Inc.*, 552 Pa. at 71, 713 A.2d at 609.

■ Section 201 of the Zoning Ordinance defines an accessory use as "a use subordinate to the principle use of land or of a building on a lot and customarily incidental thereto." Permitted accessory uses in an R–1 Residential District are those "which are clearly subordinate and customarily incidental to any of the ... permitted principal uses," identified in Section 401.2 of the Zoning Ordinance. *See* Zoning Ordinance, § 401.2.D. Thus, to establish an accessory use, the applicant must prove that the use in question is secondary to the principle use and that the use is customarily found with the principle use. *Mitchell*, 838 A.2d at 826.

■ Larer relies on *Risker* and *Mitchell* for the proposition that an accessory structure that is larger in size than the principal building is not secondary to the principal building. In *Risker*, this court concluded that a private airplane landing strip was not accessory to a single family residence based on the percentage of the property used for the landing strip and the considerable impact it would have on the property. In *Mitchell*, this court found that neither a 600 seat auditorium nor a 700 seat gymnasium that were intended for use by the entire school district was accessory to a 140 student elementary school. However, the mere size of an accessory building does not alone determine whether the proposed use is incidental or subordinate to the principal use.

■ The size and scope of an accessory use is a factor the ZHB must consider in determining whether a use is subordinate and incidental to a principle use. However, we find nothing in *Risker* and *Mitchell* to suggest that the dimensions of an accessory use are *the controlling* factor. *Risker* and *Mitchell* both confirm that in order to establish an accessory use, the applicant must prove that the use in question is secondary to the principle use and that the use is customarily found with the principle use. The application for an accessory use in *Risker* was denied because the use of an airstrip was not found to be a use inferior and customarily incidental to a single family dwelling. Likewise, in *Mitchell*, the use of a gymnasium and auditorium equipped to support an entire school district was not found to be a use secondary and customarily incident to a small elementary school.

The definition of "Accessory Building and Structures" does not make any reference to the size of the structures, but rather focuses on the use of the structures. The record reflects that Tennyson established that the primary purpose of the stable would be to board horses and that the indoor arena would be used to exercise the horses boarded in the stable and as a teaching area during inclement weather. Tennyson testified that the majority of employee hours would be dedicated to maintenance of the stable and the boarding aspects of her business. Sanders opined in his professional capacity as a professional engineer that riding arenas are a normal accessory to a stable. In addition, Tennyson's contractor, Nissley, testified that based on his twenty years of experience in constructing equestrian facilities, indoor and outdoor arenas are commonly associated with stables. Although

8. Act of July 31, 1968, P.L. 805. Section 603.1 was added by Section 48 of the Act of December 21, 1988. P.L. 1329.

nearly twice the size of the stables, the indoor arena is clearly subordinate to the stables as the arena would be without purpose but for the stables.

The ZHB, considering all the testimony and evidence, determined that the indoor arena was accessory to the stable and thus by definition, subordinate and customarily incidental to the principle use, the stable. In affirming, common pleas reasoned that the

> size of the structures does not dictate their status as primary/subordinate. The stable need only be large enough to house the horses that board there, while the arena needs to be large enough to exercise, train and ride the horses. Of necessity, the arena covers a larger area.

Common pleas Opinion at 9. We agree with common pleas. The size of the structure does not dictate the status as primary or accessory. It is obvious that the stable need be only large enough to house the horses who live there and that the area available to the horses for exercise and riding would necessarily be larger. Further, the testimony of Tennyson, Sanders and Nissley supports the conclusion that an indoor riding arena is a use "subordinate" and "customarily incidental" to a stable.[9]

### Special Exception

■ Larer next contends that common pleas erred in determining that she did not carry her burden of demonstrating that Tennyson's proposal was detrimental to public health, safety and welfare. *Bray v. Zoning Bd. of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909, 911 (1980).

■ A special exception is not an exception to the zoning ordinance but,

rather, a permitted use, allowed by the applicable legislation so long as specifically listed standards are met. *Bray*, 410 A.2d at 911. By showing compliance with the specific requirements of the ordinance, an applicant identifies the proposal as one which the local legislature has expressly designated to be appropriate in the district and, therefore, presumptively consistent with the promotion of health, safety and general welfare. *Id.* The burden then shifts to objectors to rebut the presumption by proving that the proposed use will adversely affect the welfare of the community in a way not *normally* expected from the use. *H.E. Rohrer v. Zoning Hearing Bd. of Jackson Twp.*, 808 A.2d 1014, 1018 (Pa.Cmwlth.2002) (emphasis added).

■ The objectors, when presenting evidence, must "raise specific issues concerning the proposal's general detrimental effect on the community before the applicant is required to persuade the fact-finder that the intended use would not violate the health, safety and welfare of the community." *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 139 Pa.Cmwlth. 206, 590 A.2d 65, 71 (1991). The objectors cannot meet their burden by merely speculating as to possible harm, but instead must show "a high degree of probability that it will [substantially] affect the health and safety of the community." *In re Archbishop O'Hara's Appeal*, 389 Pa. 35, 53–54, 131 A.2d 587, 596 (1957).

In this case, the Zoning Ordinance expressly permits "stables" by special exception. Zoning Ordinance, § 401.2.B.5. In addition, in the R–1 Residential District, the Zoning Ordinance permits by right:

> Agricultural uses and necessary buildings related to the tilling of the land, the

---

**9.** We note that "[e]ducational uses excluding business and trade schools" are also permitted by special exception in an R–1 Residential District, Zoning Ordinance, § 401.2.B (4), arguably providing an alternative basis for a special exception as a riding academy.

raising of farm products, the raising and keeping of horses, cattle and other livestock, and the raising of poultry and poultry products subject to the agricultural use standards of Section 802.9.

Zoning Ordinance, § 401.2.A.3.

The testimony of Larer and her neighbors did no more than express worry about *potential* manure smells, well water contamination and flies. Other than raising these concerns, neither Larer nor the other neighbors put on any evidence to establish a detrimental impact in excess of that anticipated under the ordinance. Such speculative testimony is insufficient to establish the high degree of probability of specific detrimental consequences. *In re Archbishop O'Hara's Appeal,* 389 Pa. at 54, 131 A.2d at 596. As the record indicates only an impact normally associated with this permitted use, the evidence falls short of the "high probability standard" of specific detriment to the public welfare.

### Bradford Point Land Development Plan

 Larer finally asserts that Tennyson's proposal is barred by the Board of Supervisors' approval of the Bradford Pointe Land Development Plan.[10] Specifically, she seeks a determination that Tennyson's proposal violates the restrictive covenants contained in the Declaration of Easements and Covenants and the Bradford Pointe Open Space Management Plan (collectively, Declaration).

The ZHB considered and addressed the Declaration, concluding that it "speaks for itself," and that the proposed development of the property is in conformity with the requirements of the Declaration. ZHB opinion at 3–4. Common pleas concluded that the ZHB is not empowered to interpret or enforce the Declaration, because disputes involving the Declaration were outside the purview of the ZHB and as a consequence beyond common pleas' scope of review.

The Pennsylvania Supreme Court determined in *Appeal of Michener,* 382 Pa. 401, 115 A.2d 367 (1955), that use restrictions contained in instruments of title have no bearing on zoning applications. The Court stated that:

> [z]oning laws are enacted under the police power in the interest of public health, safety and welfare; they have no concern whatever with building or use restrictions contained in instruments of title and which are created merely by private contracts. If these applicants were to succeed in obtaining a variance relieving them from the restrictions of the zoning ordinance they would still be subject to the restrictions contained in their deeds, but the enforcement of those restrictions could be sought only in proceedings in equity in which the grantors, their representatives, heirs and assigns, would be the moving parties ... Courts in trying a zoning case will ordinarily exclude evidence of private restrictions, and in trying a private restriction case will exclude evidence of the zoning. This is done on the grounds of immateriality.

382 Pa. at 404, 115 A.2d at 369–70. Based on the Supreme Court's holding in *Michener,* we agree with common pleas. *See*

---

10. In Larer's recitation of facts, Larer presents statements relating to the Township's consideration and approval of the Bradford Pointe Land Development Plan. Tennyson asks this court to strike certain sections of Larer's brief relating to these statements. It is beyond cavil that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal. *Pugh v. Workers' Comp. Appeal Bd. (Transpersonnel, Inc.)* 858 A.2d 641, 645 n. 7 (Pa.Cmwlth.2004). These assertions are *dehors* the record and may not be considered upon appeal. Thus, we will only consider the facts of record but decline to strike sections of Larer's brief.

*also Koresko v. Farley,* 844 A.2d 607, 616 (Pa.Cmwlth.2004) ("A private landowner's right to sue lies not in the MPC, but under restrictive covenant."); *Fayette County v. Cossell,* 60 Pa.Cmwlth. 202, 430 A.2d 1226, 1228 (1981) ("Zoning law has no application to the resolution of disputes between private parties over real estate interests.").

Accordingly, we affirm.

### *O R D E R*

AND NOW, this 17th day of June, 2008, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby AFFIRMED.