**K. HOVNANIAN PENNSYLVANIA ACQUISITIONS, LLC,**
Appellant

v.

**NEWTOWN TOWNSHIP BOARD OF SUPERVISORS.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2008.

Decided July 25, 2008.

Marc D. Jonas, Blue Bell, for appellant.

John P. Koopman, Langhorne, for appellee.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

K. Hovnanian Pennsylvania Acquisitions, LLC (Hovnanian) appeals from an order of the Court of Common Pleas of Bucks County affirming a decision of the Newtown Township Board of Supervisors (Board) to deny Hovnanian's application for a conditional use approval of its "elderly housing" project. The issues raised include whether the appointment of a special solicitor to represent Newtown Township (Township) in the conditional use proceeding created a biased and prejudiced tribunal in violation of Hovnanian's due process rights and whether the trial court imposed an incorrect burden upon Hovnanian and disregarded its compliance with criteria in the Joint Municipal Zoning Ordinance for Newtown, Upper Makefield and Wrightstown Townships, 1983 (Ordinance), as amended.

I

Hovnanian owns 19.2 acres within the R–2 High Density Residential zoning district, located at York Lane on the northwestern corner of Buck Road (Route 532) and the Newtown Bypass (Route 413), a major highway connecting to Interstate 95. Buck Road is a six-lane road where it intersects with York Lane. In June 2004 Hovnanian filed its application proposing to develop elderly housing to be known as "K. Hovnanian's Four Seasons," consisting of single-family detached homes. The Ordinance permits elderly housing, use B–17, in the R–2 zoning district "provided the conditions for conditional use approval have been met in accordance with Article XIII, in addition to Article VIII...." Section 405.A.2a.

Article VIII, Section 803.B–17 of the Ordinance provides standards for elderly housing and states in pertinent part as follows:

Elderly housing shall include a form of residential use that is designed and operated for mature adults with or without certain support facilities, provided:

1. ... The applicant must show, in order to qualify, that single prospective residents of apartment housing have attained the age of at least fifty-five (55) years or that families to occupy such units are elderly families (i.e., families whose heads or their spouses are at least fifty-five (55) years of age or are

under a disability as defined in Section 223 of the Social Security Act or in Section 1025 of the Developmental Disabilities Services and Facilities Construction Amendments of 1970). A statement shall also be included with each application setting forth *what particular features and facilities are being provided to serve specifically the needs and interests of the elderly.*

2. The tract shall have *ready access, by means of streets with sidewalks or alternate walkways, to existing commercial and professional areas.* (Emphasis added.)

Approval of a conditional use is also subject to the following general conditions set forth in Section 1301.B of the Ordinance in relevant part:

The governing body or its authorized representatives shall require that any proposed use and location among other things be:

. . .

2. An improvement which shall not be a detriment to the property in the immediate vicinity and which shall be in the best interests of the municipality, the benefit of the community, and the public welfare;

. . .

4. In conformance with all applicable requirements of this Ordinance and all municipal ordinances; and

5. Suitable in terms of effects on highway traffic and safety with arrangement for access adequate to protect streets from undue congestion and hazard.

Hovnanian proposed construction of forty-five, age-restricted single-family homes on lots of at least 6500 square feet with a walking trail and a bocce court. The entrance to the development will be through York Lane. Hovnanian proposed two cul-de-sacs, 1700 feet and 1350 feet in length, to be connected by the walking trail.

Left turns are not permitted from York Lane onto Buck Road, and U-turns from Buck Road are not allowed. Hovnanian's witness saw approximately forty percent of cars making illegal left turns from York Lane onto Buck Road to avoid traveling long distances to reach the Newtown Bypass. Hovnanian proposed a "pork chop" or an island to prevent left turns from York Lane. July 27, 2005 Hearing, p. 55; Reproduced Record (R.R.) at 204a. The closest commercial and professional facilities from the proposed use are Summit Square Shopping Center one mile from Buck Road and the Newtown Bypass and Village at Newtown Shopping Center two and one-half miles from the proposed use. There are no curbs and sidewalks on York Lane and Buck Road and no street with sidewalks or pedestrian crossing between the proposed development and the commercial and professional facilities. The Board previously approved a conditional use for elderly housing development known as Brightfields on the same property in 1989, subject to conditions, and it approved a final land development plan in 1991. The facility was for long-term care for ninety-eight percent of the projected residents. R.R. at 621a. The Brightfields project, however, was never developed.

The Board denied Hovnanian's application based on findings that Hovnanian provided no amenities geared specifically toward the elderly; that the proposed walking trail and bocce court are not particular features and facilities serving special needs and interests of the elderly; that the proposal failed to provide ready access to existing commercial and professional areas; and that the proposed cul-de-sacs exceeded the maximum length of 800 feet under Section 509.1 of the Township Subdivision and Land Development

Ordinance (Land Development Ordinance). In addition, the proposal failed to meet the general conditions under Section 1301.B.2, 4 and 5 of the Ordinance, lacked required sight distance for U-turns and turn signals on Mill Pond Road creating traffic hazards and congestion and would be detrimental to neighboring properties and Township interests.

On appeal, the trial court granted Hovnanian's request to supplement the record with evidence of Board bias and arbitrary conduct. Hovnanian took the deposition of Robert Showalter, the president of Showalter & Associates, which was involved in the Brightfields project. The Township's planning consultant Judith Stern Goldstein was employed by Showalter & Associates as a project manager and landscape architect designer from 1985 to 1995 and prepared the landscape plan for Brightfields. Hovnanian also deposed the Township manager, Robert Pellegrino, and Township solicitor, Stephen B. Harris, Esquire. The trial court allowed Hovnanian to supplement the record with evidence of the Board's recent approval of elderly housing applications for the Villa project with 172 units and the Delancey Court project with 120 units. Hovnanian declined the trial court's offer for the matter to be remanded to the Board to supplement the record and for the application to be amended to propose shuttle service to the commercial and professional areas, as was permitted for the Villa project.

The trial court rejected Hovnanian's assertion of bias on the part of the Township solicitor and found that the Board did not act in a biased or arbitrary manner. Unlike Hovnanian's project, access to the Villa project was via Route 413, a two-lane highway with lesser vehicular volume and a lower speed limit. That project provided a card room, a fitness center, a swimming pool, a tennis court, an office, a kitchen and shuttle service to commercial and professional areas. The trial court noted substantial differences between the Brightfields project and Hovnanian's project, and it rejected the argument that it may approve the proposed facility with the condition that Hovnanian provide a shuttle service to commercial and professional areas. Concluding that Hovnanian failed to meet the criteria in Sections 803.B–17 and 1301.B of the Ordinance, the trial court affirmed.[1]

## II

Hovnanian argues at the outset that the Township appointed a special solicitor without any statutory authority and that the appointment resulted in a biased and prejudiced tribunal, which denied its due process rights to a fair and impartial adjudication. At the beginning of the first Board hearing, Hovnanian's counsel objected to the participation of Terry W. Clemons, Esquire, who was appointed by the Township as special solicitor in the proceeding. Counsel asserted that the Township lacked authority under the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10101–11202, to make

---

1. Where, as here, the trial court took additional evidence, it must determine the case *de novo*, making its own findings of fact based on the record before the Board as supplemented by the additional evidence, and this Court must then determine on appeal whether the trial court, rather than the Board, committed an abuse of discretion or an error of law. *Mitchell v. Zoning Hearing Board of*

*Mount Penn*, 838 A.2d 819 (Pa.Cmwlth.2003). The trial court abuses its discretion if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *McGonigle v. Lower Heidelberg Township Zoning Hearing Board*, 858 A.2d 663 (Pa.Cmwlth.2004).

the appointment and that the appointment would not allow for a fair and impartial hearing. The Township's regular solicitor noted the objection and stated that the appointment was required to comply with due process and to enable him to question witnesses and to make evidentiary rulings as advisor to the Board.

Hovnanian contends that the appointment of a special solicitor in a conditional use proceeding is not expressly or impliedly authorized by the MPC or the Ordinance and that the Township did not appoint a special solicitor in any other conditional use case. Hovnanian essentially argues that the Board acted in an adversarial and an adjudicatory role and failed to avoid even an appearance of bias and impropriety and that the Township's solicitor acted in an adversarial nature throughout the hearings by questioning Hovnanian's witness and controlling the testimony and evidence. Also, the trial court disregarded the evidence of disparate treatment and conscious discrimination against Hovnanian and its *de novo* review did not cure the due process violation. The Board responds that the Township has a right to participate in a conditional use proceeding as a party and has authority to appoint a special solicitor to avoid an appearance of impropriety and bias. As well, the Township solicitor's function was to ask questions for clarification, and the trial

court's *de novo* review rendered moot Hovnanian's due process argument.[2]

■ When a zoning ordinance allows a governing body the power to grant or deny conditional uses pursuant to express standards and criteria, the governing body "shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria." Section 913.2(a) of the MPC, added by Section 93 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.2(a). Although the Board in deciding a conditional use application acts in the capacity of a tribunal, it has "an additional interest in the proceeding—i.e. to see that its zoning ordinance was not violated." *Collier Stone Co. v. Township of Collier Board of Commissioners,* 735 A.2d 768, 772 (Pa.Cmwlth. 1999).

■ Municipal corporations may do those things that the legislature expressly or by necessary implication has placed within their power to do. *Naylor v. Township of Hellam,* 565 Pa. 397, 773 A.2d 770 (2001). Section 1102 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 66102, authorizes the township solicitor to "employ an additional attorney without the assent or ratification of the board of supervisors." Under Section 916.1(c)(4) of the MPC, added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(c)(4), "[t]he governing body may retain an inde-

**2.** Hovnanian has filed an application for post-submission communication under Pa. R.A.P. 2501(a), which provides that after argument or submission of a case "no brief, memorandum or letter relating to the case shall be presented or submitted, either directly or indirectly, to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of the argument." Hovnanian disputes the Township solicitor's statements during oral argument as to the special solicitor's appointment, the Township

solicitor's role in the proceeding and the trial court's finding of lack of ready access and Hovnanian's failure to amend the application to provide a shuttle service. The Board submits that Hovnanian's arguments are rendered moot due to the *de novo* review. Under Rule 2501 a party must first seek court permission to file post-submission communications. Moreover, Hovnanian already addressed the arguments in his brief. There is no reasonable basis for the application, and accordingly it is denied.

pendent attorney to present the defense of the challenged ordinance or map on its behalf and to present their witnesses on its behalf" in a curative amendment proceeding.

A fair trial conducted in a fair tribunal is a basic and fundamental requirement of due process. *Horn v. Township of Hilltown*, 461 Pa. 745, 337 A.2d 858 (1975). In *Horn* the Supreme Court held that the procedure in which the same solicitor represented the zoning hearing board and the township opposed to the application for a variance was susceptible to prejudice and must be prohibited. *See also Newtown Township Board of Supervisors v. Greater Media Radio Co.*, 138 Pa. Cmwlth. 157, 587 A.2d 841, 844 (1991) (holding that "the members of the Board may not be accustomed to functioning in the role of a decision-making tribunal" but that "when a governing body is acting in this capacity, it must adhere to the principle stated in *Horn* that it avoid not only actual bias, but also even the appearance of bias or impropriety"); *Sultanik v. Board of Supervisors of Worcester Township*, 88 Pa.Cmwlth. 214, 488 A.2d 1197 (1985) (finding conflict of interest where township hired attorney as special counsel to represent township's adversary position against landowners' claim and board of supervisors hired another attorney from the same law firm as board advisor). Under these holdings, the Board's appointment of a special solicitor for the proceedings was allowed by necessary implication to avoid a conflict of interest.

Hovnanian argues that to participate as a party in a conditional use case, a municipality must appoint an independent attorney to act as a hearing officer under Section 913.2(a) of the MPC, which provides that "[t]he hearing [in a conditional use case] shall be conducted by the board or the board may appoint any member or an independent attorney as a hearing officer." Section 913.2(a), however, only permits and does not mandate a governing body to appoint a hearing officer. Even if a hearing is to be conducted by a hearing officer, the ultimate decision on a conditional use application is to be made by the governing body. *Id.*

The trial court granted Hovnanian's request to supplement the record and afforded it a full opportunity to present evidence of alleged bias or prejudice "to satisfy [Hovnanian] and the public that bias did or did not factor in the Board's decision." Trial Court's March 12, 2007 Opinion and Order, p. 4. The trial court believed that "a full opportunity to investigate, compare and evaluate the reasons given for approval of other B–17 applications was necessary for preservation of the public trust in the Newtown Township Land Use approval process." *Id.* Because the trial court conducted a *de novo* review in this matter, any prior due process problems were cured. *See Garrett Group, L.P. v. County of Schuylkill*, 667 A.2d 255, 259 (Pa.Cmwlth.1995) (holding that trial court's *de novo* review "cured any real or perceived due process violations that purportedly occurred"); *Fuller v. Borough of Waynesburg*, 94 Pa.Cmwlth. 361, 503 A.2d 1031 (1986) (same).

### III

An applicant for a conditional use or a special exception has the initial burden of proving compliance with specific criteria set forth in a zoning ordinance. *In re Thompson*, 896 A.2d 659 (Pa.Cmwlth. 2006). If an applicant satisfies its initial burden, the burden shifts to objectors to show that the proposed use would be detrimental to public health, safety and welfare. *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113 (Pa.Cmwlth.2002). The fact that a certain use is permitted as

a conditional use evidences a legislative determination that such use would not have an adverse impact upon the public interests in normal circumstances. *In re Cutler Group, Inc.*, 880 A.2d 39 (Pa. Cmwlth.2005).

Hovnanian posits that it met all the specific criteria for conditional use approval and that an improper burden was imposed upon it to establish that the use will not be detrimental to public health, safety and welfare. It asserts that Section 803.B–17 of the Ordinance allows elderly housing with or without support facilities and does not define "particular features and facilities" or "ready access"; that the undefined terms should be interpreted in its favor; and that the proposed walking trail and bocce court would meet the needs of the residents. Additionally, the trial court's findings regarding traffic hazards are based upon mere speculation, strict compliance with the Land Development Ordinance is not required at this stage and the general criteria set forth in Section 1301.B of the Ordinance are vague.

Hovnanian's civil engineer, Kirk Clauss, testified that a clubhouse, a swimming pool and a game room proposed for the Brightfields project "are just not economically feasible." July 27, 2005 Board Hearing, p. 51; R.R. at 200a. As the Board noted, the walking trail and bocce court proposed by Hovnanian may serve all age groups and cannot be considered "particular features and facilities" serving the needs and interests of the elderly. The ready access requirement under Section 803.B–17.2 of the Ordinance is not vague; instead, it clearly provides that elderly housing must have ready access "by means of streets with sidewalks or alternate walkways ... to existing commercial and professional areas." Hovnanian does not deny that there are no sidewalks and curbs on the streets or pedestrian crossings between Hovnani-

an's property and existing commercial and professional facilities.

Despite noncompliance with specific, objective standards, Hovnanian expected Board approval of the application subject to conditions. Each zoning case, however, must be decided on its own facts, *O'Malia v. Council of Wilkes–Barre*, 38 Pa.Cmwlth. 121, 392 A.2d 885 (1978), and in special exception and conditional use cases, the standard is whether the plan as submitted complies with all zoning requirements. *Lafayette College v. Zoning Hearing Board of Easton*, 138 Pa.Cmwlth. 579, 588 A.2d 1323 (1991). A promise or intention to comply is insufficient to show entitlement to a conditional use approval. *Council Rock School District v. Wrightstown Township Zoning Hearing Board*, 709 A.2d 453 (Pa.Cmwlth.1998). While the applicant is not required to present particular details of the design of the proposed development at the conditional use approval stage, *In re Thompson*, Hovnanian nevertheless was required to show compliance with requirements set forth in Section 803.B–17 of the Ordinance, but it failed to do so. And it declined an opportunity to amend the application to include a shuttle service.

Section 1301.B.4 of the Ordinance required Hovnanian to show that the elderly housing complies with applicable requirements of the Ordinance and all municipal ordinances. Hovnanian proposed two culde-sacs with 1700 feet and 1350 feet each in length, which failed to comply with the required maximum 800–foot length. During a land development plan review process, the governing body may "grant a modification of the requirements ... if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose

and intent of the ordinance is observed." Section 512.1(a) of the MPC, added by Section 40 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1(a). *See also Monroe Meadows Housing Partnership, LP v. Municipal Council of Monroeville,* 926 A.2d 548 (Pa.Cmwlth.2007). Hovnanian did not seek subdivision or land use and conditional use approval simultaneously, as is permitted by Section 1301.D of the Ordinance. It could have at that time requested waivers before the Board from Ordinance requirements, including those related to cul-de-sac maximum length. Finding no error, the Court affirms.

## *O R D E R*

AND NOW, this 25th day of July, 2008, the Court denies Appellant's application for post-submission communication and affirms the order of the Court of Common Pleas of Bucks County.