# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herbert Newhart and Colleen Newhart, : <br>
his wife, : <br>
        Appellants : <br>
        v. : No. 1020 C.D. 2015 <br>
        : Submitted: January 15, 2016 <br>
Plains Township Board of : <br>
Commissioners and 100 Second Street : <br>
Properties, LLC, 141 Second Street : <br>
Properties, LLC, and M.P.R. Realty : <br>
Associates, LLC :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge <br>
                HONORABLE ANNE E. COVEY, Judge <br>
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY** <br>
**SENIOR JUDGE COLINS**                    **FILED: April 21, 2016**

This is an appeal from the May 14, 2015 order of the Luzerne County Court of Common Pleas (Trial Court) affirming the May 10, 2012 decision of the Plains Township Board of Commissioners (Board) to approve a conditional use application for an automotive wrecking yard/junk yard to be located on two parcels of real property (collectively, Property) located in Plains Township, Luzerne County, subject to enumerated conditions. Each parcel is located in the I-1 Zoning District, where an automotive wrecking yard/junk yard is permitted as a conditional use. The applicants are 100 Second Street Properties, LLC and 141

Second Street Properties, LLC (Applicant)[1] and the trade name under which Applicant proposes to operate this business at the Property is Harry's U-Pull-It. Appellants are Herbert Newhart and Colleen Newhart, his wife (Objectors), who reside adjacent to the Property. For the reasons set forth below, we affirm.

A conditional use is granted by a municipal legislative body pursuant to the express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. Section 603(c) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 1, 1968, P.L. 805, *as amended*, 53 P.S. §10603(c); *Appeal of Richboro CD Partners, L.P. from the Decision of the Board of Supervisors of Northampton Township dated January 15, 2012*, 89 A.3d 742, 745 (Pa. Cmwlth. 2014). The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest. *K. Hovnanian Pennsylvania Acquisitions, LLC v. Newtown Township Board of Supervisors*, 954 A.2d 718, 725 (Pa. Cmwlth. 2008). To demonstrate that an applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance. *Visionquest National, Ltd. v. Board of Supervisors of Honey Brook Township, Chester County*, 569 A.2d 915, 917 (Pa. 1990). Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. *Susquehanna Township Board of Commissioners v. Hardee's Food Systems, Inc.*, 430 A.2d 367, 369 (Pa. Cmwlth. 1981). Once the

---

[1] On June 4, 2014, M.P.R. Realty Associates, LLC, the owner of the parcel located at 141 Second Street, which was subject to an Agreement of Sale with 141 Second Street Properties, LLC, filed a Petition to Intervene, which was granted by the Trial Court.

applicant satisfies this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the public health, safety and welfare. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1215 (Pa. Cmwlth. 2011).

Applicant submitted the conditional use application in January 2012 and a public meeting was held before the Plains Township Planning Commissioners, who recommended approval; a public hearing before the Board was held on March 5, 2012, at which Applicant presented the testimony of Harry J. Kress Jr., one of Applicant's principals and George Albert, a licensed engineer. In opposition to the application, Objectors testified and also offered testimony from Joseph M. Calabrese, a licensed engineer and Linda Yale, a resident of a property adjacent to the Newharts' property. (March 5, 2012 Hearing Transcript (H.T.), Reproduced Record (R.R.) at 23a-60a.)

Applicant's licensed engineer testified that one parcel of the Property was formerly a trucking operation and a truck storage area and yard, and the other parcel was vacant. (H.T., R.R. at 39a.) He testified further that the contiguous properties, other than that of Objectors' property on the easternmost corner, are all industrial: "Red's Towing" is located on the north side and other storage facilities are located on the northeast side; an Army Reserve Center where vehicles are staged is located on the west side of the Property and on the other side of Second Street, there are heavier industrial uses. (H.T., R.R. at 41a-42a.) At the hearing, Applicant presented an overlay of the site plan, as a revision to the original site plan, which depicts a relocated fence along the border at the corner of the Property contiguous to Objectors' residence; the proposed fence is relocated to sit at least fifty feet from the corner of Objectors' property line instead of twenty feet as

3

originally proposed, and contemplates the construction of an earthen berm, eight to ten feet high, with arborvitae at six to eight feet, to create a natural buffer between the corner of the Property and Objectors' property approximately fourteen to sixteen feet high, with the fence inside of that area. (Conditional Site Plan, Applicant's Exhibit A-4, Modified plan with additional buffer zone; H.T., R.R. at 41a.)

The Board approved the application on May 10, 2012 subject to the following conditions:

1. Hours/Days of Operation: Monday-Saturday
    a. Summer (May-October) 7:30am to 7:00pm
    b. Winter (November-April) 7:30am to 4:00pm
    c. Closed on Sunday and all Federal Holidays

2. Buffer Zone:
    a. Cork sound barrier around property bordering residential zone no closer than 100ft from property lines. Nothing else closer than 100ft except Earthen mounds/Evergreen trees consistent with present Township Ordinance.

    b. Fencing along remainder of property of slatted variety no closer than 20ft from the property line. This fencing and barrier shall be consistent with present Township ordinance.

3. Sewer line installed to main building at all times.

4. Compact[e]r/Crusher use only two (2) days a week from 10:00am to 3:00pm. Said Compacter/Crusher shall be located on the south corner of the operational storage area with its location to be approved by the Township Board of Commissioners.

5. The number of vehicles in the lower lot shall be limited to 800 cars. No vehicles except for employees/customers shall be allowed in the upper lot except for processing the vehicles for sale.

6. Operator of business shall control dirt and dust so as to not create a nuisance to any neighboring properties.

7. Any lighting of the property must be directed away from residential district and properties.

8. Applicant shall comply with all other rules, regulations and Ordinance of Plains Township not inconsistent with these conditions.

(May 22, 2012 letter from Board counsel, R.R. at 11a.) The Board set forth findings of fact and conclusions of law in support of its decision, and determined that upon review of the testimony presented at the hearing, conditional use should be granted as "adequate information and evidence had been provided and certain specific conditions placed on Applicant so that it meets the requirements for the Conditional Use in question and would protect the public health, safety and general welfare." (Findings of Fact and Conclusion of Law In Support of Decision of Plains Township Board of Commissioners Conditional Use Approval (Board Findings and Conclusions), Conclusions of Law (C.L.) ¶11, R.R. at 17a.)

Following the Board's decision to approve the conditional use, Objectors filed a notice of appeal, briefs were filed and an oral argument was held before the Trial Court on November 10, 2014; no new evidence was received by the Trial Court. On May 14, 2015, the Trial Court issued its order and this appeal followed.[2]

---

[2] In conditional use proceedings where the trial court has taken no additional evidence, the board is the finder of fact, empowered to judge the credibility of witnesses and the weight afforded to their testimony; a court may not substitute its interpretation of the evidence for that of the board. *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 743 n.5 (Pa. Cmwlth. 2008). Because the Trial Court has not taken additional evidence, our Court's review in this appeal is limited to determining whether the Board committed an error of law or an abuse of **(Footnote continued on next page…)**

Objectors argue, first, that the Board erred in approving the conditional use application because Applicant did not comply with the application and site plan requirements set forth in Section 704 of the Plains Township Zoning Ordinance. Section 704 requires the submission of a site plan at a scale of not greater than one (1") inch equal TO fifty (50') feet, which indicates, *inter alia*, the location and size of all buildings and structures, open space, parking areas, traffic access and circulation; contours of the site for each two feet of change in elevation, based upon a site field survey; streams, ponds, or any other bodies of water located on and within five hundred (500) feet of the site; the location, type and height of any required screening; a narrative outline describing the proposed use and its pertinent operational aspects and features; and "any other information required by the [Board] for determining the conformance of the conditional use with the regulations for that particular use." (Zoning Ordinance Sections 704(A)(1)-(11), R.R. at 112a-113a.)

Objectors aver that because Applicant's site plan (i) is at a scale greater than that permitted by the Ordinance; (ii) fails to show the origin of the topography including the date of the field survey and the name of the surveyor; (iii) fails to show the square footage of the building, the location and size of proposed parking areas and traffic directions on the driveway and within the interior of the site; (iv) fails to show streams, ponds or other bodies of water located within 500 feet of the site; and (v) fails to show the type and height of

---

**(continued…)**

discretion. *Joseph v. North Whitehall Township Board of Supervisors,* 16 A.3d 1209, 1215 n.3 (Pa. Cmwlth. 2010).

6

screening or fence to be provided, it does not meet the specific, objective requirements of Section 704 of the Ordinance.

We find, however, that Applicant has substantially complied with the application and site plan requirements set forth in Section 704 of the Ordinance and provided more than sufficient information to enable the Board to make its determination as to whether the proposed use can function as intended on the Property. In the course of the public hearing, as found by the Board, Applicant provided information in the form of a narrated video that showed specifically how and where - on the two parcels that make up the Property - the business would be operated; Applicant demonstrated where vehicles would be brought onto the Property, where they would be drained of fluid, where they would be located for sale and where customers would park. (Board Findings and Conclusions, Finding of Fact (F.F.) ¶7, R.R. at 14a-15a.) Applicant's licensed engineer testified that the proposed site plan as submitted referred to the eight foot high buffer fence and trees to be planted as a screen for the entire site (H.T., R.R. at 43a), and the general notes included on the site plan indicate that the screen shall not be located closer than twenty feet to any property line. (Conditional Site Plan.) The square footage of the existing building on the Property and the square footage of the existing paved area are set forth on the legend section of the site plan. (Conditional Site Plan.) In its finding of facts, the Board noted the licensed engineer's testimony as to the installation of a fence and construction of an earthen mound with trees to add a natural buffer to the residential properties abutting the Property. (Board Findings and Conclusions, F.F. ¶9.) Applicant's licensed engineer acknowledged that the submitted site plan, which includes topographic information, was not based upon a field study performed by Applicant, but stated rather that Applicant had utilized an

7

old survey that had been sealed by another licensed surveyor, and was in the process of performing its own field survey. (H.T., R.R. at 47a.) The Board concluded that the facility as proposed would have proper access for emergency vehicles, and further concluded that it had considered the testimony of all parties and the exhibits submitted, and believed that "Applicant did meet the standards set forth in the Zoning Ordinance…." (*Id*., C.L. ¶¶ 14,17.)

Objectors argue further that Applicant failed to demonstrate compliance with Sections 1101-1123 of the Ordinance. We disagree. Article 11, Sections 1101-1123 of the Ordinance govern off-street parking and loading and set forth requirements for parking and access drives; grading, pavement and drainage of off-street parking; screening, lighting; and handicapped accessible spaces.

In *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 907 A.2d 494 (Pa. 2006), the Pennsylvania Supreme Court addressed the circumstances under which an application for a special exception for off-site parking may be granted, distinguishing the decisions of this Court in *Edgmont Township v. Springton Lake Montessori School, Inc.*, 622 A.2d 418 (Pa. Cmwlth. 1993), *Lafayette College v. Zoning Hearing Board of the City of Easton*, 588 A.2d 1323 (Pa. Cmwlth. 1991), and *Baird v. New Britain Township*, 537 A.2d 976 (Pa. Cmwlth. 1988), upon which Objectors rely. In *Broussard*, the Supreme Court held the grant of a special exception to be appropriate, noting that in each of the three cases decided by this Court, the property owner had failed to include in its submissions before the zoning board any indication of an intention to fulfill the conditions associated with the special exception at issue,[3] whereas the applicant in

---

[3] The Supreme Court stated:

**(Footnote continued on next page…)**

*Broussard* submitted a plan that addressed all of the ordinance's prerequisites for the special exception sought, and reasonably showed that the property owner was able to fulfill them in accordance with the procedures set forth by the zoning code, as reasonably interpreted by the board. 907 A.2d at 501-502. Here, the Board found that Applicant's witness provided testimony as to the location of customer parking, and also noted the licensed engineer's testimony that although the site plan does not indicate exact parking spaces or traffic circulation, he testified that there was sufficient access to the parcels of land. (F.F. ¶¶ 7, 11.) In its 1925(a) opinion, the Trial Court concluded that substantial evidence exists to demonstrate the conditional use application's conformity with Sections 1101-1123 of the Ordinance, citing specifically to that portion of the cross-examination of Applicant's principal wherein he testified as to the access road by which vehicles will enter the Property, where they will be staged, and where customer parking will occur. (Trial Court 1925(a) Opinion, R.R. at 244a.)

---

**(continued…)**

> The *Edgmont* court, for example, did not suggest that the proposed land and building alterations had to be performed before a special exception could issue; rather, so long as the plan included these provisions in a satisfactory manner, approval could be conditioned upon full compliance with the plan at a later date. Because, however, the zoning board had approved the special exception solely upon the landowner's promise to *revise the plan* to come into compliance with the zoning code, the court reversed…[l]ikewise, the applicant in *Baird* simply expressed his general purpose to comply with applicable regulations, but there was nothing in the proposal as submitted to the board that reflected any intent to do so; and in *Lafayette College*, the school's plan simply did not satisfy the zoning code's parking requirements.

*Broussard*, 907 A.2d at 501-502.

Objectors next argue that Applicant failed to meet the requirements of Section 708 of the Ordinance, which requires the submission of an Environmental Impact Statement, including a response to a series of items set forth in subsections 708.01-708.13.[4] The transcript from the hearing held before the Board on March 5, 2012 includes an Index of Exhibits including 'Applicant Exhibit 4 - Environmental Impact Study.' (H.T., R.R. at 24a.) This study is referred to during the hearing before the Board and was admitted into evidence; however, it is not part of the record. Objectors argue specifically that Applicant violated Ordinance subsection 708.2(g) by failing to submit a sufficient storm water management plan, and present the memorandum report of its licensed engineer, which sets forth a number of issues with Applicant's application materials.[5] (Exhibit A, Joseph M.

---

[4] These items include, *inter alia*: Section 708.02(g) - a storm water management plan which shall be developed in coordination with the soils erosion and sedimentation plan; Section 708.04(a) - maximum existing elevation of site; Section 708.06(a) - source and adequacy of water to be provided to the site; Section 708.10(a) - noise levels, above existing levels, anticipated to be generated at the site (source and magnitude), during and after construction; and 708.11(j) - projected amount and type of traffic to be generated and the effects of the same on public roads and highways.

[5] By memorandum dated March 5, 2012, Joseph M. Calabrese, P.E. offered comments regarding his review of the materials submitted by Applicant as of January 30, 2012. Mr. Calabrese stated, *inter alia*, that the larger scale of the site plan submitted prevents the provision of detail required to make an informed decision; that the square footage of the existing building on the site has not been indicated, and proposed parking space locations are not shown; that it appears the topography shown has not been based on a field survey; that no bodies of water are shown on the site plan; that the plan does not detail the type of fence to be installed; that stabilizing the entire site is critical for dust control; and that no empirical data is provided on the expected noise levels at the site. The memorandum also questions whether existing water service connection to the building is of adequate size and condition to meet water needs; whether the existing sewer lateral servicing the building is adequate, and why a Preparedness, Prevention and Contingency (PPC) Plan has not been submitted for review given that all fluids are to be removed from vehicles on site, and questions how the average daily traffic to be generated was estimated and how the
**(Footnote continued on next page…)**

Calabrese, P.E. Review of Materials Submitted, R.R. at 85a-88a.). In its 1925(a) opinion, the Trial Court found that there was substantial record evidence demonstrating Applicant's conformity with Ordinance Section 708, citing specific pages of the hearing transcript wherein Applicant's witnesses offered information regarding numbers of vehicles, numbers of customers, numbers of employees, information about noise emitted and elevations. (Trial Court 1925(a) Opinion, R.R. at 243a.) The Trial Court also referred to testimony from Applicant's licensed engineer wherein he stated that the storm management plan was in fact attached to the back of the environmental study, and provided information with regard to surface area paving plans and water and sewer provisions, with estimated usages per day; Applicant's licensed engineer was questioned about Applicant's environmental assessment regarding noise levels and he offered information regarding changes in air quality, stating that all operational equipment was monitored and regulated by the PA Department of Environmental Protection. (H.T., R.R. at 48a.) Applicant's licensed engineer further testified as to Applicant's statement, in the environmental impact study, that there will be no 'critical areas,' as that term is defined in the Ordinance, based upon its determination, made in reliance upon National Wetland Inventory maps, that there were no wetlands within two thousand feet of the Property. (*Id*.) Accordingly, we determine that the Board's findings that the proposed use "currently has proper sewage disposal and water" and is not "more objectionable in terms of noise, fumes, odor, vibrations and lighting [than] operations of any permitted use in an

---

**(continued…)**

determination that no critical areas exist within 2000' of the site was made. (Exhibit A, Joseph M. Calabrese, P.E. Review of Materials Submitted, R.R. at 85a-88a.)

11

Industrial District," are supported by substantial evidence, and that the Board has not abused its discretion in determining that Applicant met the standards set forth in the Ordinance.

Finally, Objectors argue that Applicant failed to satisfy the requirements of both Sections 706 and 802.19 of the Ordinance. Section 802.19 provides supplemental regulations for the specific use of 'junk yards and automotive wrecking yards.'[6] Section 706 sets forth the general standards to be utilized in review of applications and site plans, including:

> A. The proposed use shall not jeopardize the community objectives [of] this Ordinance nor shall it adversely affect

---

[6] Section 802.19 of the Ordinance provides, in relevant part:

All new junk yards and automotive wrecking yards shall comply with the following:

A. Such premises shall at all times be maintained so as not to constitute a nuisance or menace to the health of the community or residents nearby or a place for the breeding of rodents and vermin.

…

G. The manner of storage and arrangement of junk and the drainage facilities on the site shall be such as to prevent the accumulation of stagnant water upon the premises. A storm water drainage plan shall be required.

…

I. There shall be a roadway fourteen (14') feet in width provided for every forty (40) linear feet of junk. The roadway shall be kept open and unobstructed for proper access for firefighting equipment and safety purposes.

J. Junk shall not be stored within one hundred (100') feet of any adjoining property line or nearer than one hundred (100') feet to any adjoining or abutting street.

K. All junk yards shall be completely screened from view on all sides by a buffer area as so defined in Article 2 of this Ordinance. The required fence shall not be closer than twenty (20') feet to any property line.

the health, safety and welfare of the public and/or the environment.

- - -

C. Existing and future streets and access to the site shall be adequate for emergency services, for avoiding undue congestion, and for providing for the safety and convenience of pedestrian and vehicular traffic.

D. The relationship of the proposed use to other activities existing or planned in the vicinity shall be harmonious in terms of location and size relative to the proposed operation and the nature and intensity of the operation involved.

E. The relationship of the proposed use to other activities existing or planned in the vicinity shall be harmonious in terms of the character and height of structures, buildings, walls and fences, so that the use, and development of adjacent property is not impaired.

F. The proposed use shall not be more objectionable in its operation in terms of noise, fumes, odors, vibration or lighting than would be the operations of any permitted use in the district.

G. The submission of an Environmental Impact Statement for all nonresidential conditional uses in accordance with Section 708 of this Ordinance, and all subsections thereunder.

- - -

(Zoning Ordinance Section 706, R.R. at 113a-114a.)  The Trial Court opined that substantial record evidence existed to demonstrate the conformity of the proposed conditional use application with the provisions of Section 706 of the Ordinance, specifically citing seventeen individual pages of the hearing transcript containing testimony from Applicant's licensed engineer regarding, *inter alia*, emergency vehicle access, noise, fencing/screening, creation of a sound barrier, paving/dust control, trash disposal, expected numbers of vehicles on the Property and

13

equipment placement. (Trial Court 1925(a) Opinion, R.R. at 243a.) The Trial Court further concluded that substantial evidence existed to demonstrate the conditional use application's conformity with Section 802.19, specifically citing twelve individual pages of the hearing transcript wherein evidence as to the maintenance and operation of the proposed automotive wrecking yard was offered. (*Id.*, R.R. at 243a-244a.) The 'General Notes' included on the Conditional Use Site Plan include information regarding the prohibition of burning of any materials, and the storage of garbage, rubbish or toxic materials on site; the notes provide that a fourteen foot-wide access road shall be provided for every forty linear feet of reclaimed material, and said roadway shall be kept open and unobstructed for proper access for emergency and safety purposes. The Conditional Use Site Plan further provides information regarding the existing public water and sewer supply on site and indicates that no solid waste will be developed and/or processed during and after construction, nor will there be changes to air quality during or after construction.

We find no error in the Board's conclusion that Applicant has demonstrated by substantial evidence its compliance with the objective standards and criteria of the Ordinance. Objectors argue that the Board failed to rely upon the credible expert testimony of their licensed engineer, and should credit their expert's opinion that the application is deficient relative to the general and specific requirements for its approval as outlined in the Ordinance. However, our courts have made clear that the Board is the sole judge of the credibility of witnesses, and has exclusive authority to determine the weight to be afforded to their testimony. *Appeal of Richboro CD Partners, L.P.*, 89 A.3d at 755; *Tennyson*, 952 A.2d at 743 n.5. Further, the Board is entitled to considerable deference in interpreting the

14

Ordinance. *Caln Nether Co., L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004).

The Board found that the proposed use did not jeopardize the community objectives of the Ordinance nor did it adversely affect the health, safety or welfare of the public or environment, so long as the specific conditions enumerated were met. (Board Findings and Conclusions, C.L. ¶ 13, R.R. at 208a.) It further concluded that the proposed use was consistent with that which previously existed and most of the surrounding vicinity. (*Id.*, C.L. ¶ 15, R.R. at 209a.) Recognizing that there is a residential use adjacent to one of the parcels, the Board noted that the proposed use is in an industrial zone, and sufficient safeguards had been put into place to protect the residential properties. (*Id.*) The burden on objectors to produce evidence of a detrimental effect by the proposed use on the public health, safety and welfare is a heavy one. *Sunnyside Up Corporation v. City of Lancaster Zoning Hearing Board*, 739 A.2d 644, 649 (Pa. Cmwlth. 1999). Objectors are required to present evidence that establishes, to a high degree of probability, that the use will generate impacts not normally associated with the type of use and that the impacts generated would pose a substantial threat to the health and safety of the community. *In re Brickstone Realty Corporation*, 789 A.2d 333, 342 (Pa. Cmwlth. 2001).

The Trial Court opined that the Board "did not abuse its discretion in determining that the [Objectors] did not sustain their burden in establishing that the proposed use will have a detrimental impact on the surrounding community," and stated that they "have failed to establish 'to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from this type of use.'" (Trial Court 1925(a) Opinion, R.R. at 244a,

15

quoting *Aldridge v. Jackson Township*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009).) Objectors' assertions of adverse impacts upon public health, welfare and safety were based primarily on the opinion of their licensed engineer that the proposed access drive and street is inadequate and there is a *possibility* of leakage from the vehicles, and the testimony of Mrs. Newhart, who expressed her concerns that a fence cannot prevent noise, dust or fumes from reaching her property, that other businesses will elect not to locate themselves adjacent to the proposed use, and that there will be environmental hazards as a result of liquids leaking into the ground. However, the Board not only found specifically that there was proper access for emergency vehicles, and that the proposed uses are "not more objectionable in terms of noise, fumes, odor, vibrations and lighting than operations of any permitted use in an Industrial District," but it also placed conditions upon Applicant so as to protect the health, safety and welfare of the surrounding neighbors. (Board Findings and Conclusions, R.R. at 18a.) We conclude that the Board did not err in its decision to grant conditional use approval and accordingly, the Trial Court's order is affirmed.


_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herbert Newhart and Colleen Newhart, :
his wife,                                              :
                           Appellants           :
                     v.                                : No. 1020 C.D. 2015
                                                         :
Plains Township Board of                    :
Commissioners and 100 Second Street :
Properties, LLC, 141 Second Street     :
Properties, LLC, and M.P.R. Realty      :
Associates, LLC                                 :

## **O R D E R**

AND NOW, this 21st day of April, 2016, the May 14, 2015 order of the Luzerne County Court of Common Pleas is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge