Dale **RISKER,** Chester **Risker** and Ethel **Risker**

v.

**SMITH TOWNSHIP ZONING HEARING BOARD and Smith Township.**

**Appeal of: Smith Township.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2005.
Decided Nov. 21, 2005.

---

Lane M. Turturice, Washington, for appellant, Smith Township.

William A. Johnson, Washington, for appellees, Dale Risker, Chester Risker, and Ethel Risker.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN JUBELIRER.

Smith Township (Township) appeals from an order of the Court of Common Pleas of Washington County (trial court), which reversed a determination of the Smith Township Zoning Hearing Board (ZHB) that a grass landing strip is not an accessory use to a single family dwelling.

The appellees, Dale Risker and his parents, Chester and Ethel Risker (collectively referred to as Landowners) sought permission to construct a one hundred foot wide and nineteen hundred foot long grass landing strip, with landing lights, on part of their forty-five acres of land in Smith Township, Washington County (Property). One of the Landowners, Dale Risker, owns an antique Piper Cub airplane that he wants to fly, as a form of recreation, from the Property. Part of the Property is zoned C–1 Conservation and part is zoned A–1 Rural; but the proposed landing strip, which sits atop a reclaimed strip mine, would be located within the C–1 Conservation district. Dale Risker currently resides in a single-family dwelling on the Property. The C–1 Conservation district does not permit airports or landing strips by right or as a conditional use; nevertheless, Landowners seek to construct the landing strip as an accessory use to a single-family dwelling.[1] Section 601 of the Smith Township Zoning Ordinance Book defines accessory use as: "[a] *subordinate use* which is *clearly incidental* and *related*

---

1. Apparently, the proposed landing strip comports with the requirements for approval by the Federal Aviation Administration (FAA) and the Pennsylvania Department of Aviation.

*to* that of a main structure or main use of land." (Emphasis added.)

Landowners filed an Application for a Building and Zoning Permit to construct a "private landing strip" on the Property for the "incidental and occasional use by Dale Risker." (Test. 12–18–03, Landowner Ex. A.) The Smith Township Supervisors denied that application because, *inter alia*, (1) "the [Property] identified in the application [is] located in the C–1 Conservation District and airports are not an authorized use in [that] district"; and (2) "[a] 'private landing strip' is not customarily found as an accessory structure to a principal use of land and therefore cannot be considered an accessory use." (Test. 12–18–03, Landowner Ex. B.) Landowners appealed to the ZHB seeking an interpretation of the ordinance.[2] (Test. 12–18–03, Landowner Ex. C.)

Based on the testimony and exhibits produced,[3] the ZHB noted what, in addition to the grass landing strip, would be constructed on the Property in connection to the landing strip:

Dale Risker proposed constructing a small accessory building for housing a tractor and other miscellaneous farm equipment. The building would be approximately 50′ X 50′ and would also store his plane. There would be minimal lighting outlining portions of the strip for occasional use. The nature of the lighting is that it would be activated very briefly and lighting would not bleed onto adjoining properties. In sum, the landing strip would be for the incidental and occasional personal use by Dale Risker.

(ZHB Decision at 2.) The ZHB also made the following relevant findings regarding the nature and impact of the proposed landing strip and the Ordinance's restrictions on the proposed use:

2. Airports/Private Landing Strips are not an authorized use in [the C–1 Conservation] District.

So for that reason I believe that it was not incidental. [B]ecause . . . it consumed a larger portion of the property than the principal use, I considered it a principal use.

Additionally, the landing strip was not a subordinate use, as I said for those reasons, that in size alone it would exceed the size of the principal use. The airplane landing strip is not incidental to nor related to the single family dwelling. The definition of accessory use indicates that those uses would be incidental to the single family dwelling uses, such as driveways, sidewalks, patios, porches, private residential swimming pools. All those uses are incidental because without that principal structure, the single family dwelling, they wouldn't be part of the lot.

In this case the airport landing strip is actually permitted or authorized in a different district as a principal use, and is not customarily found as an accessory to a single family dwelling.

(Test. 12–18–03 at 19–21.)

---

2. Landowners also brought a substantive validity challenge, claiming that the Township Ordinance, while providing for land use as an "airport," failed to make any provision for the otherwise legitimate use of property for a private landing strip. (Test. 12–18–03, Landowner Ex. C.) Landowners do not raise this issue in this appeal.

3. Rick Drozynski, a planning consultant for the Township, provided succinct testimony as to why he did not view the landing strip as an accessory use:

[T]he drawing that was provided indicates a landing strip that's 100 feet wide by 1,900 feet long, that crosses two parcels of property that total roughly 45 acres in area. The area of the landing strip is 190,000 square feet, or about 4.36 acres of area. [The landing strip j]ust in terms of size alone exceeds the principal use in size, which would be the single family dwelling, and consumes almost 10 percent of the total property area in this site.

3. The Smith Township [O]rdinance does authorize use of land for taking off, storing and landing airplanes in the A–1 district as a conditional use.

4. The airport conditional use provides [sic] for that airport and that district as a conditional use without any restrictive conditions, except for general conditions that would apply to all conditional uses.

5. The Smith Township Zoning Ordinance adequately provides for landing and taking off and storing airplanes in another district without any unreasonable restrictions.

6. The Smith Township Zoning Ordinance provides for accessory uses to be permitted uses within the C–1 District.

. . .

8. The proposed landing strip is 100 feet wide by 1,900 feet long and crosses two parcels of property that total roughly 45 acres. The area of the landing strip is 190,000 square feet, or about 4.36 acres.

9. In terms of size, this area exceeds the principal use in size, which is applicants' single family dwelling, and consumes almost ten percent of the total property area of the site.

10. The landing strip is not incidental to nor related to the single family dwelling and is not customarily found as an accessory use to a single family dwelling.

11. The construction and use of a private landing strip in the C–1 District as an accessory use dramatically changes the principal use of the property as a single family dwelling, is not subordinate and

clearly incidental to a single family dwelling and therefore offends the Smith Township Zoning Ordinance.

(ZHB Decision at 3–4.) Based on these findings, the ZHB concluded that the proposed landing strip would not be accessory to the single-family dwelling and sustained the denial of Landowners' permit application. Landowners then appealed that decision to the trial court.

Without taking additional evidence, the trial court reversed the decision of the ZHB and granted Landowners' request for the landing strip as an accessory use to a single-family dwelling. The trial court reasoned that the ZHB erred by finding that a landing strip had to *customarily* be an accessory use, because the absence of the *customarily incidental* language in the definition of accessory use rendered the Smith Township Zoning Ordinance much less restrictive than municipalities that did include that language. Citing *Southco, Inc. and Contact II, Inc., v. Concord Twp.,* 552 Pa. 66, 713 A.2d 607 (1998)(holding that wagering aspect of a turf club was permitted as a "customarily incidental" accessory use of the restaurant), the trial court also reasoned that, while a private landing strip is somewhat rare, that fact should not be controlling. In particular, the trial court found instructive a New Jersey case holding that a grass landing strip was a permissible accessory use to a residence. *Schantz v. Rachlin,* 101 N.J.Super. 334, 244 A.2d 328 (1968)(finding that the township's definition of accessory did not include the *customarily incidental* language and the landing strip did not change the primary use of the property as a residence), *affirmed,* 104 N.J.Super. 154, 249 A.2d 18 (App.Div.1969).[4] The trial

---

**4.** The Township argues that *Schantz* is no longer "good law" because a subsequent opinion disagreed with its reasoning and holding. See *Tanis v. Twp. of Hampton,* 306 N.J.Super. 588, 704 A.2d 62 (1997)(distinguishing and calling into question the validly

court held that "[Risker's] proposed use of a grass landing strip, which would not involve paving, the building of any accessory structures or additional lighting, for the private, recreational, non-commercial use of the ... small, single engine, vintage 1941 Piper Cub airplane, is a permissible accessory use under the Smith Township zoning ordinance as a matter of law." (Trial Ct. Op. at 6–7.) The Township then appealed to this Court.[5]

Before this Court, the Township argues that the trial court erred in reversing the ZHB's determination that the construction of a "landing strip" on property located in the Township's C–1 Conservation District was not permitted as an accessory use.[6]

■■■ As a preliminary matter, we note the now well-settled principle that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *Smith v. Zoning Hearing Bd.*, 734 A.2d 55, 57 (Pa.Cmwlth. 1999), *pet. for allowance of appeal denied*, 561 Pa. 664, 747 A.2d 904 (1999). Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance. *Id.* at 58. While it is undeniable that we are to interpret ambiguous language in an ordinance in favor of the property owner and against any implied extension of the restriction, such a restrictive reading of an ordinance is unwarranted where "the words of the zoning ordinance are clear and free from any ambiguity." *Isaacs v. Wilkes–Barre City Zoning Hearing Bd.*, 148 Pa.Cmwlth. 578, 612 A.2d 559, 561 (1992)(citing Section 603.1 of the Municipalities Planning Code (MPC)).[7] When interpreting zoning ordinances, this Court relies on the common usage of words and phrases and construes language in a sensible manner. *Steeley v. Richland Twp.*, 875 A.2d 409, 414 (Pa. Cmwlth.2005).

The Township's position is based on the plain language in the definition of accessory use in the Ordinance, which it believes supports the decision of the ZHB. Because the proposed landing strip is in no way connected and/or related to the other uses

---

of *Schantz* and holding that private landing strips are extremely rare and, therefore, are not a customary accessory use of property as a residence).

5. "Our standard of review in a zoning case, where the trial court has taken no additional evidence, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. An abuse of discretion will be found if the board's findings are not supported by substantial evidence." *Warner Jenkinson Co., Inc. v. Zoning Hearing Bd. of the Twp. of Robeson*, 863 A.2d 139, 142 n. 5 (Pa.Cmwlth.2004).

6. It is undisputed that the landing strip would not be located on the same parcel as the residence. The record is not clear whether the residence is located within the C–1 Conservation District, as would be the landing strip, or within the A–1 Rural District. The Township argues in its brief that there cannot be an accessory use to a principal use in another zoning district and that, because the parcel on which the proposed landing strip is to be located is vacant (its most recent use was as a strip mine), there is no **principal use** on that parcel; therefore, there can be no **accessory use**. Because of our holding in this case, we do not address the merits of these arguments.

7. Act of July 31, 1968, P.L. 805, *as amended*, added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1. That section reads:

In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

permitted by right within the C–1 Conservation district (agriculture, single-family dwelling, public and parochial schools, public and parochial playgrounds, and churches), it is not "a subordinate use that is clearly incidental and related to a single-family dwelling." Believing that there is no true ambiguity in the definition of accessory use, the Township asserts that a "landing strip," in a common sense interpretation, does not fall within the definition. Instead, the Township views the proposed nineteen hundred foot landing strip as a principal use of the Property, not an accessory use.

We agree that the trial court erred in reversing the decision of the ZHB. While the Landowners assert that the ZHB impermissibly engrafted the requirement that the proposed accessory use be *customarily* found as an accessory use, that reference is not the basis of the ZHB decision. The ZHB also premised its decision on the finding that the proposed landing strip would not be *subordinate* and *clearly incidental* to a single-family dwelling. (ZHB FOF ¶¶ 10, 11.)

█ Not even a broad reading of accessory use, as Landowners assert is required by Section 603.1 of the MPC, includes the construction of a grass landing strip as either *subordinate* or *incidental* to a single-family dwelling. (ZHB FOF ¶¶ 10, 11.) Pursuant to its dictionary definition, *subordinate* means, "placed in or occupying a lower class, rank, or position: INFERIOR . . ." and *incidental* means, "being likely to ensue as a . . . minor consequence. . . ." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1244, 629 (11th ed.2003).

Here, the proposed one hundred foot wide and nineteen hundred foot long landing strip, totaling approximately forty-five acres and containing permanent landing lights, is greater in size than the principal use. With such size, the landing strip will not be in a "lower position" or "inferior" to the single-family dwelling. Accordingly, the ZHB did not abuse its discretion or commit an error of law in its determination that the proposed landing strip would not be *subordinate* to the single-family dwelling.

Likewise, the proposed landing strip's impact on the Property and its surrounding neighbors will not be "of minor consequence" to the single-family dwelling and, thus, not "*clearly incidental* . . . to the main structure or principal use of the land." Landowners contend that the antique airplane, as it flies over a neighboring home, will emit no greater noise than a household blender. (Test. 12–18–03 at 45–47.) However, Dale Risker, in response to a neighbor's accusation that he flew over his house so close that he could "count the tires on his plane," admitted to flying over neighboring homes. (Test. 12–18–03 at 83–84.) There is substantial evidence to support the ZHB's finding that the construction of the proposed landing strip will dramatically change the character of the principal use of the property. (FOF ¶ 11.) Accordingly, the ZHB did not abuse its discretion or commit an error of law in its determination that the construction of a landing strip, so Landowners can fly their antique airplane, would not be *incidental* to the single-family dwelling—thus, not a permitted accessory use.

Landowners assert that the trial court correctly reversed the ZHB because, in Pennsylvania, a proposed accessory use does not necessarily have to be "commonly found" as an accessory use; thus, regardless of its uniqueness, Landowners' proposed grass landing strip is permissible as an accessory use of a single-family dwelling. In support of this assertion, the trial court relied upon *Southco, Inc. and Contact II, Inc.* and *Benoff v. Zoning Bd. of Adjustment,* 84 Pa.Cmwlth. 309, 479 A.2d 68, 70 (1984)(holding that the storage of a

small outdoor motor boat was an accessory use "customarily incidental" to a dwelling), for the proposition that an accessory use may exist even where there is no evidence that a majority, or even a substantial number, of similarly situated properties are engaged in a similar accessory use. We do not believe the holdings of those cases extend so far as to allow the construction of the proposed grass landing strip as an accessory use.

In *Southco, Inc. and Contact II, Inc.,* our Supreme Court held that off-track betting on simulcast horse racing was an accessory use [8] to a restaurant. However, its holding was not premised solely on the conclusion that "an accessory use may exist even where there is no evidence that a majority, or even a substantial number, of similar properties are engaged in a similar accessory use." *Id.* at 75, 713 A.2d at 611. Rather, our Supreme Court reasoned that the proposed turf club was "customarily incidental," because it was "akin" to other forms of entertainment provided by restaurants in that township, and it would be "secondary" to the restaurant because, by law, the wagering aspects of the turf club would only constitute twenty-five percent of the proposed club/restaurant. *Id.* at 74–75, 713 A.2d at 611. In *Benoff,* this

Court held that an outboard motor boat used solely for recreational purposes by the appellant's children was an accessory [9] use to a single-family dwelling and reasoned, "[i]tems which are used for the private, recreational purposes of a homeowner would ***naturally exist near his home,*** as a use ***incidental*** to the residential use of the home." 479 A.2d at 70 (emphasis added).

Here, regardless of whether the landing strip and plane are solely for the recreational use of Dale Risker, the ZHB did not err in its application of the Ordinance's requirement that an accessory use be *subordinate* and *clearly incidental* to the single-family dwelling. In the final analysis, both the off-track betting in *Southco, Inc. and Contact II, Inc.,* which constituted only twenty-five percent of the property's use, and the boat in *Benoff,* which was only stored at the house, though customarily incidental, were both also *subordinate* and *incidental* to the principal use of the respective properties because, implicitly, both were "inferior" and "a minor consequence" to the principal use. The same cannot be said of the proposed nineteen hundred foot runway.[10]

Accordingly, based on the foregoing analysis, we hold that the ZHB neither

---

8. Section 104 of the Concord Township Zoning Ordinance defined an accessory use as "a use conducted on the same lot as, and subordinate to, a principal use to which it is related (which use is clearly incidental to and customarily found) in connection with a particular principal use." *Southco, Inc. and Contact II, Inc.,* 552 Pa. at 74, 713 A.2d at 611.

9. Section 14–102(2) of the Philadelphia Zoning Code defines "accessory use" as "[a] use, including all necessary public utility facilities, subordinate to the main use on the lot and customarily incidental to the main use, excluding signs." *Benoff,* 479 A.2d at 70.

10. Our holding is in line with recent case law and supports the decision of the ZHB that a landing strip would not be secondary or inci-

dental to the single-family dwelling. In *Kuszyk v. Zoning Hearing Bd. of Amity Twp.,* 834 A.2d 661, 666 (Pa.Cmwlth.2003), this Court held that the zoning hearing board did not err by finding that "flying a helicopter from a single-family residence is neither a customary ***nor incidental*** use ...." (emphasis added). Similarly, the Court of Common Pleas of Montgomery County, in *Myers v. Zoning Hearing Bd. of Upper Hanover Twp. and Upper Hanover Twp.,* 138 Montg. Co. L.R. Part II 169 (C.P.Pa.), *affirmed,* 782 A.2d 82 (Pa.Cmwlth.2001)(memorandum opinion), *pet. for allowance of appeal denied,* 568 Pa. 688, 796 A.2d 319 (2002), held that a dirt motocross track was neither customarily incidental ***nor subordinate*** to the principal use of the property as a residence.

abused its discretion nor committed an error of law in its determination that a grass landing strip is not an accessory use to a single-family dwelling. Therefore, we reverse the trial court's order.

### *ORDER*

**NOW,** November 21, 2005, the Order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby REVERSED.