IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Marshall and Dara-Gans Marshall, :
                 Appellants       :
                                       :
            v.                   :   No. 102 C.D. 2020
                                       :   Argued: November 9, 2020
East Bradford Township Board of      :
Supervisors and Daniel Soland and     :
Dorothy Soland                     :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                  HONORABLE MICHAEL H. WOJCIK, Judge (P)
                  HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: February 17, 2021

       John Marshall and Dara-Gans Marshall (Landowners) appeal the December 20, 2019, order of the Court of Common Pleas of Chester County (trial court) denying Landowners' conditional use application for a bed and breakfast (B&B). In doing so, the trial court affirmed the decision of the Board of Supervisors of East Bradford Township (Supervisors) that Landowners' proposal to use a barn for special events at the B&B was not authorized by the Township Zoning Ordinance.[2] We reverse the trial court and remand the matter for further proceedings.

## Background

       Landowners own 10.96 acres of land (Property) in the R-2 Residential Zoning District of the Township. On the Property are eight buildings, including a

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] EAST BRADFORD TOWNSHIP ZONING ORDINANCE, *as amended*, adopted October 13, 1970, by Ordinance No. 21 (ZONING ORDINANCE).

farmhouse built in 1777, commonly referred to as the Paxson House; a corncrib; a spring house; a 6,000-square-foot barn (Barn) that predates the Paxson House; and a tenant house previously used as a veterinary clinic (Tenant House). Landowners submitted a conditional use application to establish a B&B estate on the Property. They then amended the application to provide for receptions not to exceed 100 guests. Reproduced Record at 79a (R.R.___).

The Zoning Ordinance provides for two types of B&B establishments, which are distinguished by the number of guest rooms and available amenities. A "Bed-and-breakfast facility" is defined as follows:

> A use accessory to an owner-occupied, single-family detached dwelling, consisting of guest rooms available for short-term overnight rental and the provision of breakfast service to overnight guests.

ZONING ORDINANCE §115-6.A; R.R. 72a. A "Bed-and-breakfast estate" is defined as follows:

> An owner-occupied Class I historic resource with at least four, but no more than 10, guest rooms, common areas and exitways for short-term overnight rental, with provisions for breakfast service for the overnight guests. In addition, there may be weddings, wedding receptions, small parties and special events.

*Id.*; R.R. 71a-72a. A Class I historic resource includes "[a]ll buildings, sites, structures and objects listed individually in the National Register of Historic Places," "[a]ny resources which have received a Determination of Eligibility (DOE) by the Pennsylvania Historical and Museum Commission (PHMC)," and "[o]ther resources of similar historical significance [] added to Class I by the [Supervisors]." ZONING ORDINANCE, §115-122A(1). In sum, a B&B facility must be located within a

2

dwelling, but a B&B estate, by contrast, may be located within an owner-occupied Class I historic resource.

The maximum attendance at a "special event" at a B&B estate is calculated under a formula of 1 person per 10 square feet of "common area," up to a maximum of 100 guests. ZONING ORDINANCE, §115-48.2.L(8); R.R. 74a.[3] In the event the special event takes place outdoors, maximum attendance is limited to the number allowed in the common area. *Id.* The Zoning Ordinance defines "Bed-and-breakfast common area" as follows:

> That area available on the first floor (grade level) of a [B&B] estate which shall be the *only interior area used* for the conduct of weddings, wedding receptions, small parties and special events. The common area shall be exclusive of the owner's living area.

ZONING ORDINANCE, §115-6.A; R.R. 71a (emphasis added).

Finally, the Zoning Ordinance provides that "[a]ccessory buildings shall not be included in the conduct of the [B&B] estate." ZONING ORDINANCE, §115-48.2.K; R.R. 74a. The Zoning Ordinance defines "accessory structure" as "[a]

---

[3] This section states:

> The following design standards shall be applicable to bed-and-breakfast estate operations:

> \*\*\*

> (8)   The maximum occupancy of a bed-and-breakfast estate for weddings, wedding receptions, small parties and special events shall be based on the available common area, the formula being one person per 10 square feet of common area.  In the event that the aforesaid activities are conducted out of doors, the maximum occupancy may not exceed that which has been established by the common area.  Neither indoor nor outdoor maximum occupancy may exceed 100 people.

ZONING ORDINANCE, §115-48-2.L(8); R.R. 74a.

3

building subordinate to the principal building on a lot and used for purposes customarily incidental to those of the principal building." ZONING ORDINANCE, §115-6.A; R.R. 70a. It defines "accessory use" as "[a] use subordinate to the principal use of land or of a building on a lot and customarily incidental thereto." *Id.*

The Supervisors conducted a series of hearings on Landowners' conditional use application. Dorothy and Daniel Soland (Objectors), who are neighboring property owners, were granted intervention.

Landowners testified on their own behalf and presented the testimony of Denny Howell, a civil engineer who assisted Landowners in evaluating the impact of the proposed B&B estate upon the neighborhood. Objectors presented the testimony of several neighbors concerned about Landowners' proposal.

In support of their proposed B&B estate, Landowners testified that they plan to host weddings, graduation parties and similar events up to a limit of 100 guests. Notes of Testimony (N.T.), 6/12/2018, at 52-53; R.R. 203a-04a. They will allow music, but without amplification, and will require events to end by 9:00 p.m. Because the Paxson House lacks a "common area," Landowners propose to use the Barn, which is built into a hill, to host the events. The 3,306-square-foot common area will be sited "at the grade level of the upper portion of the [Barn.]" N.T., 7/10/2018, at 142; R.R. 293a. A courtyard of 3,000 square feet, adjacent to the grade level of the lower portion of the Barn, will be tented for outdoor special events.

Landowners intend to locate the guest rooms in the Tenant House[4] because the Paxson House is too small. Because the Property is on the Township's

_____

[4] Landowners filed a variance application with the Township Zoning Hearing Board to allow the Tenant House to be used for guest rooms, which was granted. The trial court vacated the Zoning

4

historic resources map, Landowners believe that the entire parcel is a "Class I Historic Resource" that can be used to operate a B&B estate. Landowners concede, however, the PHMC designated only the Paxson House, Barn, spring house and corncrib for placement on the National Register of Historic Places. Landowners testified that currently they are using the lower level of the Barn for storage and the upper level for private events. They intend to reside in the Paxson House after its renovation and consider all the buildings on the Property to be owner-occupied.

Landowners' consultant, Howell, testified that he was familiar with the Property because it was previously owned by his father-in-law, John Drury. Drury used the Barn to store a boat, woodworking tools, and equipment used for his property management and construction business. Drury frequently did woodworking in the Barn in the early morning hours and, to Howell's knowledge, no neighbors ever complained about this "very loud" noise. N.T, 7/10/2018, at 189; R.R. 340a. Drury also used the Barn for recreation and installed a television and bar in the upper level for this purpose. Howell testified that the Barn had been used in conjunction with the veterinary clinic previously located in the Tenant House. Although stalls are located in the Barn's lower level, Howell never saw animals in the Barn while Drury owned the Property.

Craig Baxter, a neighbor, testified that Drury used the Barn to store commercial equipment for his business, but his woodworking was a hobby. Baxter

---

Hearing Board's decision on the basis that notice of the zoning hearing was deficient under the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202, and the Zoning Ordinance. On further appeal, this Court reversed the trial court's decision and remanded this matter to the trial court for a determination as to whether Landowners established the right to the variance granted by the Zoning Hearing Board. *Soland v. Zoning Hearing Board of East Bradford Township* (Pa. Cmwlth., No. 825 C.D. 2019, filed July 15, 2020).

was not aware of the Barn having been used to house any animals for the veterinary clinic, but he confirmed that there are "horse stalls" in the Barn. N.T., 8/16/2018, at 286; R.R. 437a. Annie Ouimet, another neighbor, confirmed that Drury used the equipment in his Barn to maintain the Property. She was aware that Landowners have hosted parties in the Barn.

## Board of Supervisors' Decision

The Supervisors denied Landowners' conditional use application. They rejected Landowners' claim that all buildings on the Property were owner-occupied. The Supervisors held that only the owner-occupied Class I historic resources could be used for a B&B estate. Because Landowners intend to reside in the Paxson House, the Supervisors considered that to be the only owner-occupied building.

With regard to the B&B estate's common area, the Supervisors noted that the Zoning Ordinance requires a conditional use application to include "scaled drawings of the floors of the dwelling and indicate the owner's living areas, overnight guest rooms/suites and common area[.]" ZONING ORDINANCE, §115-48.2(J); R.R. 74a. The Supervisors interpreted this directive on application drawings to mean that a B&B estate's common area must be located in the owner's dwelling and not in another structure. Accordingly, they held that Landowners could not treat 3,306 square feet of the Barn as the B&B estate's common area.

The Supervisors rejected Landowners' argument that the Barn was a principal structure. The Supervisors concluded that the principal structure in a B&B estate can only be the structure occupied by the owners, *i.e.*, the Paxson House.

6

Finally, the Supervisors held that Landowners did not comply with the noise standards established in the Zoning Ordinance. In addition, issues concerning bathroom facilities, parking, and landscaping remained unresolved. Supervisors' Decision at 25-28; R.R. 45a-48a.

## Trial Court Decision

Landowners appealed to the trial court, which affirmed the Supervisors. Without taking additional evidence, the trial court held that the Barn could not be used as the common area of the proposed B&B estate. Concluding that the R-2 Zoning District permits only one principal structure, a dwelling, the trial court found that the Barn was an accessory structure that could be used only for purposes incidental to the residential use of the Paxson House and not for the B&B estate.

The trial court agreed with the Supervisors that a B&B estate's common area must be located on the first floor of "a dwelling," which was the Paxson House. Trial Court Op. at 10-11; R.R. 730a-31a. The trial court found the Supervisors' decision consistent with the trial court's decision in a separate zoning appeal, where the trial court had denied Landowners a variance to use the Tenant House for guest rooms.

Because the trial court affirmed the Supervisors' denial of Landowners' conditional use application on the above grounds, it did not address the Supervisors' other reasons for their denial that related to noise, septic, parking and landscaping.

Landowners appealed to this Court.

7

## Appeal

On appeal,[5] Landowners raise two issues. First, they argue that the trial court erred in holding that the Zoning Ordinance prohibited their proposal to locate the common area of their B&B estate in the Barn. They contend that the Zoning Ordinance does not require a B&B estate, which can have up to 10 rooms and host events attended by up to 100 guests, to be housed in a single building, *i.e.*, a dwelling. Second, they argue that the trial court erred in basing its decision, in part, on a separate zoning appeal, which was irrelevant to the Supervisors' decision.

## Analysis

### I. Common Area

Landowners argue that the trial court erred in its construction and application of the Zoning Ordinance. The Barn was the first building constructed on the Property and has been used for agricultural purposes for over 200 years. It was also used for the veterinary clinic and by the prior owner, Drury, to store equipment for his business. At no time has the Barn been used in a manner subordinate or incidental to the Paxson House. Further, the Zoning Ordinance does not limit each parcel in the R-2 Zoning District to one principal structure, as the trial court concluded.

---

[5] In a land use appeal, where the trial court takes no additional evidence, our review determines whether the local governing body committed an error of law or an abuse of discretion. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). "The governing body abuses its discretion when its findings of fact are not supported by substantial evidence[,] which is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)). "Where an appeal presents issues of law, including issues of statutory interpretation, this Court's scope of review is plenary and our standard of review is *de novo*." *1050 Ashbourne Associates, LLC v. Cheltenham Township Board of Commissioners*, 167 A.3d 828, 831 n.6 (Pa. Cmwlth. 2017).

8

Landowners further argue that a B&B estate's common area does not have to be located within the dwelling. The Zoning Ordinance contemplates the use of interior space for special events, but it does not prohibit the use of a non-dwelling Class I historic resource for special events. Alternatively, Landowners contend that they should be allowed to use the 3,000-square-foot courtyard, which is adjacent to the lower level of the Barn, in the calculation of the common area of the B&B estate.

Objectors counter that the Barn is an accessory building that cannot be used for a B&B estate because its agricultural usage has "long lapsed." Objectors' Brief at 21. The Barn is now used by Landowners for storage, which use is clearly incidental to the Property's residential use, as was Drury's use of the Barn "for socializing and for a wood working hobby," which were also incidental uses. Objectors' Brief at 22.

For their part, the Supervisors contend that the Zoning Ordinance permits only one principal structure, the dwelling, on any lot in the R-2 Zoning District. This renders all non-dwelling structures as accessory structures, which cannot be used in the B&B estate. They contend that because the Barn "has lost any other historical use," it is "undoubtedly subordinate to the [] Property's residential, principal use." Supervisors' Brief at 19. They note that their interpretation of the Zoning Ordinance is entitled to deference.

We begin with a review of the applicable legal principles. "An applicant for a conditional use has the burden to demonstrate compliance with the specific criteria of the ordinance." *In re Thompson*, 896 A.2d at 670. Once those criteria are satisfied, the application must be granted unless objectors present

sufficient evidence that the proposed use will have a detrimental effect on the public health, safety, and welfare. *Id.*

Generally, "a zoning ordinance should be construed in a manner that does not, by mere implication, fetter a landowner's reasonable use of his land." *Hess v. Warwick Township Zoning Hearing Board*, 977 A.2d 1216, 1221 (Pa. Cmwlth. 2009). "[T]he permissive nature of an ordinance provision should be [given] its broadest sense, and restrictive provisions should be construed in the strictest sense." *Id.* at 1221. "[T]his rule of construction yields where the intent of the local legislative body can be discerned with the aid, if necessary, of the usual interpretational tools, such as looking to the structure of the ordinance as a whole to ascertain legislative intent." *Id.* at 1221-22. "[A] board of supervisors is entitled to considerable deference in interpreting its zoning ordinance." *Caln Nether Co., L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004).

Here, Landowners seek to establish a B&B estate for overnight guests and special events. As such, they had the burden of proving that their B&B estate could satisfy the common area requirement set forth in Section 115-48.2.L(8) of the Zoning Ordinance to accommodate 100 guests at special events. The trial court held that because the Zoning Ordinance permits only one principal structure, namely, the Paxson House, this necessarily made the Barn an accessory structure, which cannot be used in a B&B estate. This appeal turns on the language of the Zoning Ordinance.

The R-2 Zoning District provides "for low-density residential development" and "continued agricultural, open space and conservation uses." ZONING ORDINANCE, §115-13.A. Land in the R-2 Zoning District may be developed

10

in accordance with either a "[c]onventional development option" or an "[o]pen space development option." ZONING ORDINANCE, §115-14.A. Further, "[n]o tract may be used for more than one of the permitted residential development options[,]" and

> [u]nder any development option, a building may be erected, altered or used and a lot may be used for *any one of the following purposes* as provided below:
>
> > (1) Any use permitted by right, condition or special exception in the R-1 District shall likewise be permitted by right, condition or special exception in the R-2 District, except that land application of sludge shall not be permitted.

ZONING ORDINANCE, §115-14.C (emphasis added). In turn, the R-1 Zoning District allows a building to be erected, altered or used, and a lot to be used, for "*any one of the following purposes*":

> (1) Single-family detached dwelling.
>
> (2) Agriculture (subject to the provisions of §115-11D of this chapter) and forestry (subject to the provisions of §115-11E of this chapter).
>
> > \* \* \*

ZONING ORDINANCE, §115-10.C(1)-(2) (emphasis added).

The Supervisors construed the above-cited provisions to mean that only one principal structure per parcel is permitted in the R-2 Zoning District. Sections 115-14.C and 115-10.C address land use; they do not state that there can be only one principal structure for each use. An agricultural use involves more than one building. Indeed, the Property has both a corncrib and a barn.

11

Other provisions in the Zoning Ordinance support the conclusion that more than one structure can be used for a use permitted in the R-2 Zoning District. For example, Section 115-11.D of the Zoning Ordinance sets forth area and bulk requirements for farmland structures such as a "barn," "[s]ilos and bulk feed bins," "manure storage," and "dwelling units," all of which are associated with the permissible "agricultural use" in the R-2 Zoning District. ZONING ORDINANCE, §115-11.D. It does violence to the language of the Zoning Ordinance to hold that only one principal structure is permitted on a parcel where an agriculture use is permitted.

Further, Section 115-48.2 of the Zoning Ordinance expresses the legislative intent to allow more than one building to be used for a B&B estate. It states:

> [B&B] estates, as defined in [Section] 115-6, may be operated in any zoning district as a conditional use when in full compliance with the following requirements:
>
> > A. The only *buildings* eligible for *a [B&B] estate* use shall be owner-occupied Class I historic resources.
> >
> > ***
> >
> > K. Accessory buildings shall not be included in the conduct of the [B&B] estate.
> >
> > ***

ZONING ORDINANCE, §115-48.2; R.R. 73a-74a (emphasis added). By using the plural, "buildings," the Zoning Ordinance contemplates that more than one building

12

can constitute a B&B estate, so long as the "buildings" are "owner-occupied Class I historic resources." *Id.*

We reject the Supervisors' assertion that the Zoning Ordinance expresses a legislative intent to allow only one principal building on a lot because it defines an "accessory structure" as subordinate to a singular "principal building." Supervisors' Brief at 18-19 (citing ZONING ORDINANCE, §115-6.A). The Statutory Construction Act of 1972 provides that "[t]he singular shall include the plural, and the plural, the singular." 1 Pa. C.S. §1902. *See Geerling Florist, Inc. v. Board of Supervisors of Warrington Township*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020) (the rules of statutory construction are applicable to ordinances). Even so, the Zoning Ordinance expressly states that "buildings" can be "eligible for a [B&B] estate." ZONING ORDINANCE, §115-48.2.A; R.R. 73a. Under the Statutory Construction Act of 1972, where a general provision in a statute "conflict[s] with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail[.]" 1 Pa. C.S. §1933. Accordingly, the special provision in Section 115-48.2 of the Zoning Ordinance trumps the general provision that applies to all parcels in the R-2 Zoning District, assuming it should be read as suggested by the Supervisors.

The Barn is a Class I historic resource, and the Landowners have stored their personal belongings in the Barn and hosted events there. This satisfies the occupancy requirement of Section 115-48.2.A of the Zoning Ordinance. Contrary to the Supervisors' belief, Landowners do not have to eat and sleep in the Barn in

13

order to "occupy" it.[6] *See, e.g.*, *In Re Petition to Set Aside Upset Tax Sale (Hansford Appeal)*, 218 A.3d 995, 1001-02 (Pa. Cmwlth. 2019) (owner was an occupant of his property at time of upset tax sale despite his incarceration).

The Barn is not a structure accessory to the Paxson House. Section 115-6.A of the Zoning Ordinance defines "accessory structure" as "[a] building *subordinate to* the principal building on a lot and used for purposes *customarily incidental to* those of the principal building." ZONING ORDINANCE, §115-6.A; R.R. 70a (emphasis added). The trial court completely ignored the requirement that an accessory structure must be *subordinate* and *customarily incidental* to the principal building. A barn is not "customarily incidental" to a farmhouse; arguably, the reverse is the case.

In support of their position that the Barn is not incidental or subordinate to the Paxson House, Landowners cite this Court's decision in *East Rockhill Township v. East Rockhill Township Zoning Hearing Board* (Pa. Cmwlth., No. 687

_____

[6] Judge Ceisler's dissent points out that because the Zoning Ordinance does not define the term "owner-occupied," it must be construed according to its common approved usage, and Merriam-Webster's Collegiate Dictionary defines the term as "lived in by the owner." *Marshall v. East Bradford Township Board of Supervisors*, __ A.3d __, ___ (Pa. Cmwlth. 102 C.D. 2020, filed February 17, 2021 (Ceisler, J., dissenting) slip op. at 4 (citing MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/owner-occupied). Contrary to the dissent's proposition, however, this does not suggest that Landowners have to reside in the Barn to "occupy" the Barn. According to Merriam-Webster, "live" is "to occupy a home," and the dictionary gives two examples: "*living* in a shabby room," and "they had always *lived* in the country." *See* MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/live (last visited January 29, 2021). One who "lives in the country" does not have to reside in every square foot of the country. One who lives in a single-family home does not have to sleep in the garage in order to occupy the garage. Because the Zoning Ordinance does not define the term "owner-occupied," we should interpret the Zoning Ordinance in a way that allows maximum permissible use of the land. *Hess*, 977 A.2d at 1221.

14

C.D. 2018, filed April 9, 2019) (unreported).[7]  There, the landowner sought to use a residential property as the base for his landscaping business, arguing that a pole barn on his property was an accessory building "incidental and subordinate" to the dwelling.  *Id*., slip op. at 12.  This Court disagreed, holding that the use of the pole barn to store equipment had no connection to the residential use of the property.  *Id*.

Similarly, in *Risker v. Smith Township Zoning Hearing Board*, 886 A.2d 727, 733 (Pa. Cmwlth. 2005), this Court held that a private airplane landing strip was not a permitted accessory use to a single-family dwelling because it was not subordinate to the single-family dwelling, which was the main use of the land.  There, the zoning ordinance defined "accessory use" as a "subordinate use which is clearly incidental and related to that of a main structure or main use of land."  *Id.* at 728-29 (emphasis in original omitted).   In so holding, we looked to the dictionary definition of "subordinate," as being "placed in or occupying a lower class, rank, or position: INFERIOR…."  *Id*. at 732 (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1244 (11th ed. 2003)).  The proposed landing strip, 100 feet wide and 1900 feet long, was far larger than the house.  "With such size, the landing strip will not be in a 'lower position' or 'inferior' to the single-family dwelling."  *Risker*, 886 A.2d at 732.  We concluded that the landing strip could not be incidental to the principal use of the land because its impact on the property and the neighbors was not of "minor consequence."  *Id*.

Finally, in *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739 (Pa. Cmwlth. 2009), a landowner proposed to build an

---

[7] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

indoor riding arena as an accessory structure for a permitted horse stable. The zoning hearing board allowed the arena even though it was much larger than the stable. Objecting neighbors asserted that the size difference made it impossible to allow the arena as "accessory" to the stable. We rejected this argument, explaining that the purpose of the stable was to board horses, and the indoor arena was needed to exercise the boarded horses. Accordingly, the indoor arena was subordinate to the stable.

The record in this case lacks any evidence that the Barn is "subordinate" to the Paxson House. *Risker*, 886 A.2d at 732. The Barn was constructed 30 years before the Paxson House, and both were part of a "large farm" until 1997, when the farm was subdivided. Trial Court Op. at 2; R.R. 722a. No evidence was presented that the Barn "would be without purpose but for" the Paxson House. *Tennyson*, 952 A.2d at 746. The R-2 Zoning District permits an agricultural use, which in turn permits multiple structures on a lot such as a barn, silos and bulk feed bins, manure storage, and dwellings. ZONING ORDINANCE, §115-11.D. Indeed, the Historic Survey by the PHMC described the Property as "an intact farmstead" and the Paxson House as a "farmhouse." Certified Record (C.R.), Item 7, No.7-d, at 3. The current use of the Barn for storage of personal belongings confirms that the Barn is owner-occupied, but it does not place the Barn in a position inferior to the Paxson House. The previous owner's use of the Barn for commercial purposes and for woodworking are not uses customarily incidental to a residential use. *See Cook v. Bensalem Township Zoning Board of Adjustment*, 196 A.2d 327 (Pa. 1963) (storage of equipment and vehicles used in property owner's business was not customarily incidental to use of dwelling); *Dimattia v. Zoning Hearing Board of East Whiteland*

16

*Township*, 168 A.3d 393 (Pa. Cmwlth. 2017) (property owners' use of their garage and driveway to build and maintain race cars was not incidental to the residential use of the property).

Having concluded that the Barn is not an accessory structure, we determine, next, whether the Zoning Ordinance allows the Barn to be used as the B&B estate's common area.

The Zoning Ordinance provides that attendance at special events at a B&B estate is limited to whatever number is yielded under the formula of 1 person per 10 square feet of common area up to a maximum of 100 persons. ZONING ORDINANCE, §115-48.2.L(8); R.R. 71a. The "[b]ed-and-breakfast common area" is "[t]hat area available on the *first floor (grade level) of a [B&B] estate* which shall be the only interior area used for the conduct of weddings, wedding receptions, small parties and special events…." ZONING ORDINANCE, §115-6.A; R.R. 71a (emphasis added). Landowners propose to place their 3,306-square-foot "common area" "at the grade level of the upper portion of the [Barn]." N.T., 7/10/2018, at 142; R.R. 293a. Objectors did not challenge this testimony or present contrary evidence.

In holding that the B&B estate's common area must be located on the first floor of a dwelling, the trial court relied on the Zoning Ordinance provision regarding the conditional use application. It states as follows:

> With the conditional use application, the applicant shall provide *scaled drawings of the floors of the dwelling and indicate the owner's living area, overnight guest rooms/suites and common area with a color legend* to distinguish each from the other and marked as an exhibit. One such exhibit shall be placed in the Zoning Officer's file.

17

ZONING ORDINANCE, §115-48.2.J; R.R. 74a (emphasis added). Because this provision requires site drawings of the "dwelling," the Supervisors concluded that the common area had to be located in the dwelling. Although the application must include a "color legend" in an exhibit that shows the owner's living area, the guest rooms and the common area, the Zoning Ordinance does not mandate that these various rooms have to be located in one building. Section 115-48.2.J relates only to an application where the B&B estate happens to be in one building.

The applicable mandate provides that the common area of a B&B estate is "[t]hat area available on *the first floor (grade level) of a [B&B] estate*[.]" ZONING ORDINANCE, §115-6.A; R.R. 71a (emphasis added). The Paxson House and the Barn are Class I historic resources and, thus, both constitute the B&B estate. Accordingly, "first floor (grade level)" in either building can be used as the B&B estate's common area. Had the Township intended the common area to be located solely in the owner's dwelling, it would have so stated, as it did in the definition of a B&B facility. ZONING ORDINANCE §115-6.A; R.R. 72a (B&B facility is a use accessory "to an owner-occupied, single-family detached dwelling").

In construing a zoning ordinance, "the permissive nature of an ordinance provision should be taken in its broadest sense, and restrictive provisions should be construed in the strictest sense." *Hess*, 977 A.2d at 1221. The Zoning Ordinance does not limit a tract of land in the R-2 Zoning District to one principal structure. Such an interpretation is inconsistent with the agricultural use permitted in the R-2 Zoning District, which allows use of a corncrib, a barn and various outbuildings, none of which is subordinate to the other. Here, the Barn is an owner-occupied Class I historic resource and not accessory to the Paxson House.

18

Landowners may, therefore, use the Barn for the common area calculation for the special events as set forth in Section 115-48.2.L(8) of the Zoning Ordinance.[8] The trial court erred in holding otherwise.

**Tenant House**

Next, we consider Landowners' challenge to the trial court's reliance on its decision in a separate zoning appeal. *See Soland v. Zoning Hearing Board of East Bradford Township* (Pa. Cmwlth., No. 825 C.D. 2019, filed July 15, 2020). *Soland* concerns Landowners' variance granted by the Township Zoning Hearing Board to allow the Tenant House to be included in the B&B estate and used for guest rooms. Several neighbors objected to the variance on the basis they had not received notice of the Zoning Hearing Board's hearing. Concluding that notice had not been satisfactory, the trial court sustained the objectors' appeal and vacated the Zoning Hearing Board's decision. This Court reversed the trial court and remanded the matter for a determination on the merits.

Here, in its December 20, 2019, opinion, the trial court observed that Landowners could not use the Tenant House to calculate the B&B estate's common area because the variance had been denied. At that point, the trial court did not have the benefit of our *Soland* decision. In light of our conclusion that the 3,306 square

---

[8] We reject, however, Landowners' alternative argument that they should be allowed to use the 3,000-square-foot courtyard for the common area calculation. The Zoning Ordinance is clear that a B&B estate's common area calculation must be based on the interior space, not exterior. ZONING ORDINANCE, §115-6.A; R.R. 71a (a B&B estate's common area is "[t]hat area available on *the first floor (grade level) of a [B&B] estate*[.]") (emphasis added). However, Landowners may hold outdoor events in conjunction with their operation of the proposed B&B estate, so long as the maximum occupancy does not "exceed that which has been established by the common area." ZONING ORDINANCE, §115-48.2.L(8); R.R. 74a.

19

feet of the Barn can be the site for the common area calculation, the issue of the common area relating to the Tenant House is moot.

To the extent Landowners seek a ruling that the entire Property is a Class I historic resource and, thus, the proposed B&B estate includes the Tenant House, we reject this claim. It is true that the Township's historic resources map appears to designate the entire Property as a historic resource, but this does not bring the entire Property and all buildings thereon within the definition of Class I historic resource. The Zoning Ordinance specifically states that Class I historic resources must receive a determination of eligibility by the PHMC. ZONING ORDINANCE, §115-122.A(1)(a)(4). A "resource" can be a building, district, site, structure, or object. C.R., Item 7, No.7-d, at 2. Several buildings on the Property, including the Paxson House and the Barn, have been designated as eligible for placement on the National Register of Historic Places. However, the Tenant House has not been so designated. As such, Landowners need a variance to place the B&B estate's guest rooms in the Tenant House.

## Conclusion

The trial court erred in concluding that the Barn cannot be the location of the "common area" used to calculate the number of guests that can attend special events under Section 115-48.2.L(8) of the Zoning Ordinance. The Zoning Ordinance does not limit the number of principal structures to one per tract of land in the R-2 Zoning District, and it does not limit a B&B estate's common area to the owner's dwelling. The Barn is an owner-occupied Class I historic resource and not accessory to the Paxson House. However, in the absence of variance relief, Landowners may not locate the B&B estate's guest rooms in the Tenant House or

20

use the interior space of that structure as part of the B&B estate's common area because the Tenant House is not a Class I historic resource eligible for the B&B estate use.

For all these reasons, we reverse the trial court's December 20, 2019, decision and remand the matter to the trial court to address the remaining issues raised in Landowners' appeal of the Supervisors' decision.


_____
MARY HANNAH LEAVITT, President Judge


Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Marshall and Dara-Gans Marshall, :
           Appellants :
            :
      v. : No. 102 C.D. 2020
            :
East Bradford Township Board of :
Supervisors and Daniel Soland and :
Dorothy Soland :

## **O R D E R**

AND NOW, this 17th day of February, 2021, the order of Court of Common Pleas of Chester County (trial court), dated December 20, 2019, is REVERSED. This case is REMANDED to the trial court for further proceedings consistent with the attached Opinion.

      Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Marshall & Dara-Gans Marshall,   :
            Appellants                :
                                    :
          v.                    :    No. 102 C.D. 2020
                                      :    ARGUED:  November 9, 2020
East Bradford Township Board of      :
Supervisors and Daniel Soland and   :
Dorothy Soland                  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge (P)
               HONORABLE ELLEN CEISLER, Judge

DISSENTING OPINION
BY JUDGE CEISLER                          FILED:  February 17, 2021

I disagree with the Majority's conclusion that the 6000-square-foot barn (Barn) located on the property owned by John Marshall and Dara-Gans Marshall (Landowners) is owner-occupied, and therefore respectfully dissent.  The authority relied on by the Majority, *In re: Petition to Set Aside Upset Tax Sale*, 218 A.3d 995 (Pa. Cmwlth. 2019) (*Hansford Appeal*), concerned whether the owner of real property sold at a tax sale qualified as an owner-occupant as defined in Section 102 of the Real Estate Tax Sale Law (RETSL).[1]  The facts presented in the matter currently before this Court are vastly different from those in *Hansford Appeal*. Accordingly, I would affirm the order of the Court of Common Pleas of Chester County (trial court).

Critical to Landowners' success in this matter is a determination that the Barn's square footage may be used to calculate the maximum occupancy of the Bed and Breakfast Estate (B&B Estate) that Landowners wish to operate on their property.  Per Section 115-48.2.A of the East Bradford Township Ordinance

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.102.

(Ordinance), the proposed B&B Estate must be located in an owner-occupied Class I historic resource.[2] The maximum occupancy of a B&B estate is calculated pursuant to a formula of 1 person per 10 square feet of common area,[3] which is derived from the area available on the first floor of the B&B estate, exclusive of the owner's living area.[4]

Landowners intend to reside in the farmhouse, which they do not intend to utilize for the proposed B&B Estate. Therefore, they must rely on the Barn's square footage to determine the extent of the B&B Estate's common area and to calculate its maximum occupancy. There is no dispute that the Barn is a Class I historic resource. The Barn's historic nature is not dispositive, however, as it must also be owner-occupied.

Relying on this Court's decision in *Hansford Appeal*, the Majority opines that Landowners "do not have to eat and sleep in the Barn in order to 'occupy' it," and concludes that the owner-occupant requirement of Section 115-48.2.A is met because Landowners have stored their personal belongings in the Barn and hosted events there. *Marshall v. East Bradford Twp.*, _ A.3d _ (Pa. Cmwlth. No. 102 C.D. 2020, filed February 17, 2021), slip op. at 13. I cannot agree, as this Court's decision in *Hansford Appeal* concerned whether an incarcerated owner of real property was nonetheless an "owner-occupant" of the property, as that term is defined in RETSL.

The appellant in *Hansford Appeal* challenged the sale of his property at an upset tax sale because he had not received personal notice of the sale as required by

---

[2] East Bradford Township, Pa., Ordinance § 115-48.2.A (October 11, 2016).

[3] Ordinance § 115-48.2.L(8).

[4] Ordinance § 115-6.A.

Section 601(a)(3) of RETSL.[5]  Section 601(a)(3) of RETSL mandates that owner-occupied property may not be sold at tax sale unless the owner-occupant has received notice of the sale by personal service at least 10 days prior to the date of the actual sale.  Section 102 of RETSL defines the term "owner-occupant" as "the owner of a property which has improvements constructed thereon and for which the annual tax bill is mailed **to an owner residing at the same address as that of the property**." 72 P.S. § 5860.102 (emphasis added).

In defending its failure to personally serve the appellant notice of the tax sale, the county tax claim bureau argued that he was not entitled to personal service as an owner-occupant of the subject property because he was incarcerated at the time of the sale.  *Hansford Appeal*, 218 A.3d at 997.  This Court disagreed, noting that the purpose of RETSL was to obtain payment of taxes, and not to strip away a citizen's property rights.  *Id.* at 1000.  In requiring personal service to owner-occupants,[6] the General Assembly expressed an interest in protecting owner-occupants "from losing the properties **wherein they reside**."  *Id.* at 1000 (emphasis added).

Setting aside the appropriateness of applying this Court's interpretation of a definition contained in a taxing statute to a wholly unrelated township zoning ordinance, the facts in *Hansford Appeal* render that decision readily distinguishable from the present matter, in that the owner-occupant in *Hansford Appeal* physically resided at the property for approximately 10 years prior to his incarceration.  *Id.* at 997.  In point of fact, the reasoning in *Hansford Appeal* lends itself to a conclusion that a property owner must, at some period in time, physically reside on the property

---

[5] 72 P.S. § 5860.601(a)(3).

[6] Ordinance § 115-48.2(A).

before he may be considered an owner-occupant of that property. There is no evidence to suggest that Landowners ever resided in the Barn.

The Ordinance does not define the term owner-occupied. The rules of statutory construction indicate that, where a term is not defined, it must be construed according to rules of grammar and according to its common and approved usage. 1 Pa.C.S. § 1903(a); *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 343 (Pa. Cmwlth. 2014). Pennsylvania courts generally use dictionaries as source material to determine the common and approved usage of undefined terms. *Id.* Merriam-Webster defines owner-occupied as "lived in by the owner." Owner-occupied, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/owner-occupied (last visited February 16, 2021). When considering this definition in conjunction with the express language of Section 115-48.2.A, it is clear that the B&B Estate must be located **in the Class I historic resource in which the owner resides**. The Barn is not inhabited, and Landowners intend to reside in the farmhouse. As a result, the interior space of the Barn cannot be used to calculate the maximum occupancy of the proposed B&B Estate. Consequently, I would affirm the trial court, which arrived at the same conclusion.

_____
ELLEN CEISLER, Judge